GENERAL SECURITIES COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94601. Promulgated September 27, 1940.

*James B. Grant, Esq.,* and *Stephen H. Hart, Esq.,* for the petitioner.
*Angus R. Shannon, Jr., Esq.,* for the respondent.

·OPINION.

BLACK: The only issue which we have to decide in this proceeding is raised by petitioner's assignment of error B, in which it contends

that in computing its "undistributed adjusted net income" for the purpose of determining its surtax, if any, as a personal holding company under section 351 of the Revenue Act of 1934, it is entitled to deduct $110,654.64 (now conceded by petitioner to be $103,898.17) on account of a dividend paid to its stockholders in property on December 1, 1934.

The Commissioner in his determination of the deficiency has allowed only $1,068.33 as a deduction for "dividends paid" on account of this property dividend. This figure of $1,068.33 was the fair market value of the property on the date that it was distributed as a dividend.

The applicable sections of the Revenue Act of 1934 are sections 351 and 115 (a), printed in part in the margin.[1]

In computing its "undistributed adjusted net income" for the purpose of arriving at its surtax, if any, as a personal holding company, petitioner is allowed to deduct the sum of all dividends paid during the taxable year. It is agreed that petitioner paid to its stockholders in 1934 cash dividends of $134,850. There is no difficulty in determining how much deduction petitioner is entitled to receive on account of these cash dividends. The Commissioner has allowed, as a matter of course, the deduction of the full amount of these cash dividends. But petitioner in 1934 also distributed to its stockholders a dividend in property. This property had an adjusted cost basis to petitioner of $103,898.17 and had an actual fair market value at the time of distribution of $1,068.33.

The question is, What amount of "dividends paid" deduction is petitioner entitled to under section 351 (b) (2) (C) of the Revenue Act of 1934 on account of this property distribution? The petitioner contends for a deduction of $103,898.17, and the Commissioner has allowed $1,068.33. We think respondent must be sustained.

It is true that property dividends reduce earnings and profits by their cost basis to the corporation which declares the dividends, but

---

[1] SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid, for each taxable year, upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:

\* \* \* \* \* \* \*

(b) DEFINITIONS.—As used in this title—

\* \* \* \* \* \* \*

(2) The term "undistributed adjusted net income" means the adjusted net income minus the sum of:

\* \* \* \* \* \* \*

(C) Dividends paid during the taxable year.

\* \* \* \* \* \* \*

(4) The terms used in this section shall have the same meaning as when used in Title I.

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (4) and section 207 (c) (1) relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

it is also true that these property dividends in the hands of the stockholders are taxable only to the extent of their fair market value at the time they are received by the stockholders. *Binzel* v. *Commissioner*, 75 Fed. (2d) 989. This fair market value may, of course, be more or it may be less than the cost of the property to the corporation.

The purpose of section 351 of the Revenue Act of 1934 in defining personal holding companies and imposing a surtax upon them is explained by the report of the Committee on Ways and Means which accompanied H. R. 7835, in the following language:

> It is recommended that a tax of 35 percent be levied on the "undistributed adjusted net income" of such corporations. This undistributed adjusted net income is determined by adding to the net income of a corporation the amount of dividends received from other corporations and the amount of partially tax-exempt interest and by subtracting therefrom Federal income taxes paid, contributions or gifts not otherwise allowed for income-tax purposes, and actual losses from the sales or exchanges of capital assets to the extent to which they are disallowed by the new provision of the bill limiting the deductibility of capital losses to the amount of the capital gains. From the result of this computation, which gives what is called the "adjusted net income", there is to be subtracted an arbitrary allowance of 10 percent of the adjusted net income and the dividends paid to stockholders during the taxable year. The purposes of the two last-named deductions are (1) to allow such corporations a reasonable reserve for contingencies and (2) to prevent the additional tax from applying to sums actually distributed. Thus, a corporation which falls within this section because of the nature of its business and the number of its stockholders can always escape this tax by distributing to its stockholders at least 90 percent of its adjusted net income. The stockholder will, of course, be subject to the graduated surtaxes upon such distributions. Thus, the section should work no real hardship upon any corporation except one which is being used to reduce surtaxes upon its shareholders.

The Senate Committee on Finance, in its report on H. R. 7835, said with reference to the personal holding company provisions of the bill, among other things, as follows:

> Many will consider the surtax imposed on these personal holding companies a harsh measure. However, a corporation which falls within this section because of the nature of its business and the number of its stockholders can always escape this tax by distributing to its stockholders at least 90 percent of its adjusted net income. The stockholder will, of course, be subject to the graduated surtaxes upon such distributions. Thus, the section should work no real hardship upon any corporation except one which is being used to reduce surtaxes upon its shareholders.

In the instant case petitioner had an adjusted net income for the year 1934, as defined by section 351 (b) (3), of $342,521.28. Can it be said that $103,898.17 of that adjusted net income was distributed to the stockholders in the distribution of property which had a fair market value of only $1,068.33 and which was taxable to the stockholders at that amount? We think not.

We think the Congressional reports from which we have quoted show that it was the intent of Congress that a personal holding company coming within the provisions of the act should receive a deduction against its "adjusted net income" for "dividends paid" of an amount equal to the amount of such dividends taxable to the stockholders. If this were not true, petitioner would receive a deduction for dividends paid of $103,898.17, which would be taxable to the stockholders only to the extent of $1,068.33. This result, we think, would be contrary to the intent of Congress.

In *Foley Securities Corporation*, 38 B. T. A. 1036, in discussing the House committee report on H. R. 7835, we said, among other things:

* * * But the report continues: "The stockholders will, of course, be subject to the graduated surtaxes upon such distributions", which demonstrates that the distributions referred to were those on which the stockholders would be taxable. * * *

We went on to hold in that case that, of a distribution of $42,375 which the taxpayer made to its stockholders in the taxable year 1934, only $26,258.97 could be deducted in computing the taxpayer's "undistributed adjusted net income" under section 351 (b) because only that amount was a taxable dividend to the stockholders.

In the instant case, regardless of the cost of the stock which petitioner distributed to its stockholders in 1934 and regardless of the way it entered it on its books, only $1,068.33 can be taxed to the stockholders, and we hold that is all that petitioner can deduct as "dividends paid" in computing its "undistributed adjusted net income." Petitioner argues that it could have sold the stock to outsiders for $1,068.33 and distributed that amount of cash to its stockholders and in that way could have realized a loss of the difference between its adjusted cost and the selling price and could have deducted this loss on its income tax return and the same tax result would have been attained as petitioner contends for in the present proceeding. Perhaps that is true, but it takes no argument to establish the proposition that tax consequences are frequently very different on one state of facts from what they are on another state of facts. So it is in the instant case.

Congress has prescribed how a personal holding company shall be taxed and what deductions it shall receive in determining its "undistributed adjusted net income" and we must give effect to those provisions even though the taxpayer personal holding company might have avoided the surtax if it had handled its transactions in some other way.

Reviewed by the Board.

*Decision will be entered under Rule 50.*