GENERAL SECURITIES CO. v. COMMIS-
SIONER OF INTERNAL REVENUE.

No. 2271.

Circuit Court of Appeals, Tenth Circuit.

Oct. 29, 1941.

Stephen H. Hart, of Denver, Colo. (James B. Grant and Lewis & Grant, all of Denver, Colo., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Warren F. Wattles, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

This is a petition by the General Securities Company [1] to review a decision of the Board of Tax Appeals.

The taxpayer is a corporation organized under the laws of the state of Colorado and is a personal holding company within the meaning of § 351(b) (1) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 757. During the calendar year 1934 the taxpayer's undistributed adjusted net income under § 351 of the Revenue Act of 1934, before the deduction for dividends paid, was $229,017.02. During the year 1934 the taxpayer paid cash dividends out of earnings and profits accumulated after February 28, 1913, aggregating $134,850. In addition thereto, on November 24, 1934, it declared a property dividend out of earnings and profits accumulated after February 28, 1913. The property dividend consisted of 1,971 shares of the preferred stock and 8,283 shares of the common stock of the Denver Tramway Corporation. These shares had been acquired, together with other assets, in 1921 by the issuance of the taxpayer's capital stock. Their adjusted basis to the taxpayer as determined by the Revenue Act of 1934 amounted to $103,898.17. Their appraised market value at the date of acquisition was $110,654.64. Upon a declaration and payment of such dividend in property the taxpayer reduced its surplus on its books in the amount of $110,654.64. The market value of the

---

[1] Hereinafter called taxpayer.

shares at the time of distribution was $1,068.33. The taxpayer deducted $110,654.64 on account of this dividend in property. The Commissioner allowed a deduction on account of such dividend in property in the sum of $1,068.33. The Board of Tax Appeals affirmed the action of the Commissioner.

The sole issue presented is the proper amount of the deduction on account of the dividend in property so distributed.

Section 351 of the Revenue Act of 1934 imposes upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of 30 per cent of the amount thereof not in excess of $100,000 and 40 per cent of the amount in excess of $100,000.

Section 351 further provides that the term "undistributed adjusted net income" means the adjusted net income minus dividends paid during the taxable year. The term "dividend" as used in § 351, is defined in § 115(a) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 703, as "any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913."

The legislative purpose of § 351 was to prevent tax avoidance by the device commonly called the "incorporated pocketbook," viz., a corporation formed by an individual who exchanges for its shares his personal holdings in stocks, bonds, or other income-producing property. By this means, while the income from the property is subjected to a corporation tax, a surtax against the individual is avoided by not distributing the income of the corporation.[2]

The stock distributed to the shareholders of the taxpayer as a dividend was income taxable to the shareholder on the basis of its actual market value when received.[3]

While the stock of the Tramway Corporation was carried on the books of the taxpayer at its value on the date of acquisition of $110,654.64, at the time of the distribution in 1934 it had depreciated in value down to $1,068.33, and what the taxpayer actually distributed as a dividend to the shareholders and what the latter actually received was stock of the value of $1,068.33.

It may be that good accounting practices required the stock to be carried on the books of the taxpayer at cost. But this was true for the reason that for income tax purposes of the taxpayer no gain or loss would be realized until the stock was disposed of and a closed transaction effected.

. But when the depreciated capital asset was distributed in payment of the dividend, it could only represent a dividend paid out of accumulated surplus and earnings to the extent of its value when distributed. All of the remaining capital assets and surplus of the taxpayer were unaffected by such distribution. The assets and accumulated surplus, less the actual value of the capital asset distributed, remained in the taxpayer. In other words, it retained all the assets and accumulated profits that it had before the distribution, except the capital asset distributed, and its actual assets, surplus, and earnings were only reduced to the extent of the value of the asset distributed. Hence, the fact that the depreciation in the capital asset distributed had not been charged against the accumulated surplus makes no difference. Furthermore, to the extent the Tramway stock had depreciated in value, the accumulated profits and earnings had been likewise reduced and were not existent at the time the distribution was made, regardless of the value at which the Tramway stock was carried on the books of the taxpayer.

The reason for the allowance of the dividend deduction is that the shareholder, provided he receives income in the requisite amount, is subject to graduated surtaxes on the dividends distributed to him, and it would be unfair also to subject such dividends to a surtax against the corporation.[4]

Counsel for the taxpayer assert that had the corporation declared a cash dividend of $1,068.33, sold the Tramway

---

[2] Inland Development Co. v. Commissioner, 10 Cir., 120 F.2d 986, 988; Noteman v. Welch, 1 Cir., 108 F.2d 206, 208.

[3] Tr.Reg. 86 promulgated under the Revenue Act of 1934, Art. 115-7; Peabody v. Eisner, 247 U.S. 347, 38 S.Ct. 546, 62 L. Ed. 1152; Binzel v. Commissioner, 2 Cir., 75 F.2d 989, 990.

[4] Report of the Ways and Means Committee of the House, H.Rep. No. 704, 73d Cong., 2d Sess., pp. 11, 12 (1939-1 Cum. Bull., Part 2, 554, 563); Report of the Senate Committee on Finance, S.Rep.No. 558, 73d Cong., 2d Sess., pp. 13–15 (1939-1 Cum.Bull., Part 2, 586, 596).

stock, and paid the dividend out of the procceds derived from the sale, the taxpayer could have deducted the amount of the loss suffered through the sale of the stock. The simple answer is that the taxpayer did not follow that course and its tax liability must be determined on the basis of what was done and not what might have been done.

Provisions granting special tax deductions are to be strictly construed.[5] When this rule of construction is applied, we are of the opinion that the amount of the deduction must be limited to the actual value of the stock at the time of distribution.

The decision of the Board of Tax Appeals is affirmed.

---

[5] Helvering v. Northwest Steel Mills, 311 U.S. 46, 49, 61 S.Ct. 109, 85 L.Ed. 29; Crane-Johnson Co. v. Commissioner, 8 Cir., 105 F.2d 740, 743; Vondermuhll v. Helvering, 64 App.D.C. 137, 75 F.2d 656, 657.