**Arthur S. FULMAN et al., Plaintiffs, Appellants,**

v.

**UNITED STATES of America, Defendant, Appellee.**

No. 76-1165.

United States Court of Appeals, First Circuit.

Argued Sept. 8, 1976.

Decided Nov. 19, 1976.

Daniel Levenson, Boston, Mass., with whom Jonathan J. Margolis, Mary Gallagher, and Lourie & Cutler, Boston, Mass., were on brief, for appellants.

Gary R. Allen, Atty., Tax Div., Dept. of Justice, Washington, D. C., with whom Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., James N. Gabriel, U. S. Atty., Boston, Mass., Gilbert E. Andrews, Jr., and Alfred S. Lombardi, Attys., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, CLARK,* Associate Justice, U. S. Supreme Court (Ret.), and CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

The sole issue in this appeal is the validity of the Treasury regulation which pro-

* Sitting by designation.

vides that the amount of a personal holding company's deduction for a dividend in kind is the company's adjusted basis in the property. Appellants contend that this regulation is invalid because the only permissible interpretation of the relevant provisions of the Internal Revenue Code is that the amount of such a deduction must be the fair market value of the property that is distributed. The district court sustained the validity of the regulation. We affirm.

The tax on personal holding companies, 26 U.S.C. §§ 541–47 (hereinafter "26 U.S. C." will be omitted from all statutory citations), is one of several devices Congress has developed to prevent individuals from taking advantage of the fact that the maximum income tax rate is substantially lower for corporations than it is for individuals. To discourage individuals with substantial investment income from incorporating their "pocketbooks", thereby avoiding taxation of that income at the higher individual tax rates, the Congress imposed a penalty tax on the undistributed income of those corporations which it determines are probably operating for tax avoidance objectives. The Code defines a corporation as a "personal holding company" for a given tax year if 60 per cent or more of its stock is owned, actually or constructively, by five or fewer individuals and if 60 per cent or more of its adjusted gross income is "personal holding company income", which is defined in § 543 as primarily passive investment income. See § 542. The Code imposes a 70 per cent tax on the company's "undistributed personal holding company income", its taxable income with specified adjustments. See §§ 541, 545(a). One such adjustment to the corporation's taxable income is a deduction for dividends that are paid. The issue in this case concerns the proper method to value such dividends.

Appellants are the successors of the Pierce Investment Company (Company), a taxpayer which the Internal Revenue Service (IRS) found to be a personal holding company for the tax years 1959 through 1963 and for which the IRS proposed a personal holding company tax of $26,571.30. In an attempt to eliminate this tax, the Company declared a dividend in the amount of $32,535 and tried to satisfy its declaration by distributing stock which had a fair market value of that amount, but in which the Company had an adjusted basis of $18,-725.11.[1] The IRS subsequently disallowed the Company's claim for a deficiency dividend of $32,535 to the extent that the amount claimed exceeded the Company's adjusted basis in the property that was distributed. In taking this action, the IRS relied upon the Treasury Regulation on Income Tax, § 1.562–1(a), which provides as follows:

"If a dividend is paid in property (other than money) the amount of the dividends paid deduction with respect to such property shall be the adjusted basis of the property in the hands of the distributing corporation at the time of the distribution."

The Company paid the resulting deficiencies in full, and appellants instituted this action for a refund in district court, claiming that the regulation in question is invalid.

In considering appellants' attack on this regulation, we begin by observing that Treasury regulations are entitled to deference. "As 'contemporaneous constructions [of the Internal Revenue Code] by those charged with administration of' [it], the Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and should not be overruled except for weighty reasons." *Bingler v. Johnson*, 394 U.S. 741, 749–50, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969) *quoting from Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831 (1948). *See also United States v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d

---

1. Although the relevant tax years had ended, § 547 and § 563 authorized the Company to reduce or eliminate its personal holding company tax by making an agreement with the IRS concerning the amount of its tax liability and then making a "deficiency dividend distribution" within 90 days of the agreement.

537 (1967). Although the one other circuit court of appeals that has considered this issue has concluded that the regulation is invalid, *see H. Wetter Mfg. Co. v. United States*, 458 F.2d 1033 (6th Cir. 1972), we are satisfied that the regulation is a reasonable interpretation of the revenue statutes and, as such, is valid.

██ We note at the outset that this regulation, which was adopted under the Internal Revenue Code of 1954, substantially reflects the rule which had been established by statute prior to 1954, but which had not been expressly reenacted in 1954. Section 27(d) of the Internal Revenue Code of 1939 expressly provided that the amount of a deduction for dividends paid in kind was either the corporation's adjusted basis in the property or the fair market value thereof, whichever was less. Here, the issue is whether Congress, by failing to include old § 27(d) in the 1954 revision of the Internal Revenue Code, intended both to preclude the Treasury Department from adopting a regulation which generally embodied the terms of the pre-1954 law, and to prescribe that it instead adopt a rule valuing the deduction for dividends paid in kind on a fair market value basis. We see no evidence that Congress intended such a result. Indeed, what evidence there is supports the validity of the regulation. Moreover, we think that the rule based upon old § 27(d) is entirely consistent with the broad objectives of the personal holding company tax, and that the contrary rule would both defeat the underlying policy of the act and produce results which would be difficult to justify rationally.

Although the 1954 Code, which has not been amended in any respect which is sig-

nificant to this case, did not prescribe the method of valuing a dividends paid deduction, the legislative history of the 1954 Code indicates that Congress contemplated that the rule of old § 27(d) was to be carried over into the 1954 revision. The Senate Finance Committee Report on § 562(a) stated as follows:

"Subsection (a) provides that the term 'dividend' for purposes of this part shall include, except as otherwise provided in this section, only those dividends described in section 316 (relating to definition of dividends for purposes of corporate distributions). *The requirements of sections 27(d), (e), (f), and (i) of existing law are contained in the definition of 'dividend' in section 312, and accordingly are not restated in section 562.*" [Emphasis supplied.] S.Rep.No.1622, 83d Cong., 2d Sess., 3 U.S.C.Cong. & Adm.News pp. 4621, 4965–66 (1954).

*See also* H.Rep.No.1337, 3 U.S.C.Cong. & Adm.News pp. 4017, 4320 (1954). Although the language of this report is ambiguous in several respects and may not support the government's claim that it indicates that § 312 is to govern such matters,[2] this report certainly indicates that Congress did not contemplate the abrogation of the rule of old § 27(d).

And there is nothing in the Code which suggests that Congress in fact intended that the deduction for dividends paid in kind be based on the fair market value of the property. Indeed, to the extent that there is anything relevant in the Code, it appears to be consistent with the regulation that is under attack. Section 561, which defines the deduction, and §§ 562 and 316, which determine which distributions qualify

---

**2.** Although the United States argues that this legislative history clearly indicates that Congress intended that § 312—which, as we subsequently note, is consistent with, but does not compel, the rule under attack—would determine the amount of a dividends paid deduction, the committee report is ambiguous. The italicized sentence's description of § 312 as "defining" the term dividend apparently refers to the role that § 312 played in the House version of the bill. The House § 312 was amended by the Senate and became § 316, which, as we will indicate, does not deal with the issue at hand. Although we note that a comparison of Code § 312 with the sections of the 1939 Code referred to in the italicized sentence suggests that the Senate Report may in fact have had Code § 312 in mind, we cannot eliminate the inference that the reference to § 312 may have simply been a typographical error. Therefore, we do not rely upon this legislative history for the proposition the government urges.

for it, are silent[3] as to the valuation of the personal holding company's deduction.[4] The only provisions of the Code which offer any guidance on this question do not appear to be directly relevant, but they seem generally supportive of the validity of the regulation and in no way suggest that the rule embodied therein is inconsistent with the statutory scheme.

Section 312 is the only provision of the Code which, to our knowledge, deals specifically with the effect of a corporate distribution on the distributing corporation. It provides that a dividend that is paid in property will have the effect of decreasing a corporation's earnings and profits by the amount of the corporation's adjusted basis in the property. Although we understand that the payment of a dividend by an ordinary corporation does not give rise to a corporate deduction, and that this section, in its normal operation, only determines the tax effects of present and future corporate distributions on the corporation's shareholders, *see* Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders

¶ 7.24, we think this section strongly suggests that Congress believed that, as far as the distributing corporation is concerned, the amount of a dividend in kind is the corporation's basis in the property. Certainly § 312 rebuts any contention that, as to the distributing corporation, the "plain meaning" of the term "dividend" is that it is equal to the fair market value of any property that is distributed, *but see H. Wetter Mfg. Co. v. United States, supra,*[5] or that Congress clearly manifested an intention to abrogate the rule of old § 27(d).[6]

The second provision of the Code—which appellants rely upon—is § 301, which defines the tax consequences of a corporate distribution on the recipient thereof. It provides "the amount distributed" to a recipient is the fair market value of the property received, in the case of a noncorporate distributee, or the distributing corporation's adjusted basis of the property (plus any gain that is recognized to the distributing corporation) in the case of a corporate distributee. To the extent that the distribution qualifies as a dividend under § 316, the

3. Even if other provisions in the Code support the regulation, appellants urge that we must hold it invalid because § 562, under which it was issued, does not directly support the regulation. This argument is strained. Since § 562 specifically deals with the subject of the dividends paid deduction—which applies to provisions other than the personal holding company tax—one would expect to find the rules governing its use in the regulations promulgated under § 562. If the regulation in question is *consistent with the terms and policy of the* revenue act—which it is—we do not believe it is rendered invalid because the specific statutory support for it is arguably found not in § 562 but elsewhere in the Code.

4. Section 561 is purely definitional. Section 562 deals with several aspects of the problem of eligibility for the deduction, but refers to § 316 for the definition of dividend. Section 316, in turn, provides that a distribution is a dividend to the extent of a corporation's "earnings and profits", § 316(a), and that a distribution in property by a personal holding company will be a dividend to the extent of the company's *"undistributed personal holding company income".* § 316(b).

5. In concluding that the regulation under attack is invalid, the *Wetter* court reasoned that § 301, which determines the effect of a corpo-

rate distribution on a recipient, established that the "plain meaning" of § 562's reference to dividend is that such dividends are valued on a fair market value basis, and that, given the "plain meaning" of the statute, it would be improper to consider any other aids to its interpretation. *See H. Wetter Mfg. Co. v. United States, supra,* 458 F.2d at 1035–36. Although we doubt that we would have refused to consider the legislative history and objectives of the personal holding company tax even if we agreed with this approach to § 562, § 312 persuades us that § 562 has no such "plain meaning". Our consideration of the legislative history and purposes of the provisions in question compel the conclusion that the regulation is valid.

6. Indeed, it is possible to read § 312 and § 316(b) as prescribing the rule in the regulation under attack. Section 316(b) suggests that, as to distributions in property by personal holding companies, the term "undistributed personal holding company income" may be substituted for "earnings and profits" wherever the latter appears in the Code. If § 316(b) were conceived of as having this implication, § 312 would announce the rule contained in the regulation.

amount distributed will be ordinary income to the recipients. *See* § 61. Although § 301 is one of the few places in the Code where the phrase "amount distributed" appears, we can see no reason to treat it as establishing the rules for determining the amount of a personal holding company's dividends paid deduction. It, of course, deals only with the effect of a distribution on the recipients, and is thus less relevant than § 312. Moreover, were § 301 determinative, the amount of a corporation's dividends paid deduction would depend upon the character of the recipient, an anomaly which we strongly doubt Congress could have intended.

Although the evidence is that Congress clearly did not intend to abrogate the rule of old § 27(d) and probably intended to carry it over substantially, the consideration we ultimately find most persuasive is that appellants' approach would significantly undercut the effectiveness of the personal holding company provisions and would produce results which, in our view, would be irrational in light of the objectives and structure of this tax. The personal holding company tax, as we have noted, was enacted to combat the tax avoidance that could result from the accumulation of income from passive investment activity in a closely held corporation. It operates to force both the distribution of such earnings and the realization of dividend income at the shareholder level by imposing a penalty tax on the undistributed *income* which had been *realized* by such corporations during given tax years. Appellants' proposed approach would permit a corporation, which had distributed property representing substantially unrealized appreciation, to continue to accumulate the income it had realized on its investments during the relevant tax year— without being under any compulsion to distribute such earnings. The net effect would be that the corporation, and hence the shareholders, could succeed in shielding passive investment income from the operations of the personal holding company tax, contrary to the clear intent of these provisions.[7] By basing the deduction for dividends paid on the amount of the corporation's investment in the property distributed, the regulation prevents any such income shielding.[8]

Appellants' approach, moreover, would produce results which we would find impossible to square with the structure and operation of this tax. Whether a corporation is a personal holding company and the amount of its personal holding company tax liability depends upon the amount and nature of the corporation's income during a given tax year. Under appellants' proposal, personal holding companies, which had identical amounts of taxable income and which had

---

7. Appellants claim that the policy of the personal holding company tax compels the acceptance of their claim that § 301 should be determinative of the amount of any deduction. They trace the history of this tax and assert that the objective of these provisions has always been to compel corporate distributions which will result in ordinary income to the shareholders of an amount that is equal to, but not greater than, the corporation's "undistributed personal holding company income" prior to the distribution. It follows, they insist, that the amount of a dividends paid deduction should be equal to the amount of income that will be recognized at the shareholder level— that is, when, as here, the recipients are individuals, the fair market value of the property. The short answer to this argument is that § 27(d) of the 1939 Code plainly adopted a contrary policy; it simply is not the case that the policy has "always been" as they assert. More significantly, our analysis of the 1954 revision of the Code has persuaded us that Congress did not intend to abandon the policy embodied in old § 27(d).

8. Appellants note that the regulation under attack has the same effect as a rule which provides that a corporation realizes a gain whenever it distributes appreciated property and then permits a deduction based on the fair market value of the property. This result, they suggest, is contrary to the policy of § 311, which provides that a corporation that distributes appreciated property only recognizes a gain in special circumstances, none of which are present in the case at bar. The short answer to this argument is that § 311 states the rule for ordinary corporate distributions, which do not give rise to corporate deductions. That corporate distributions which give rise to deductions should be treated differently is required by the objectives of this tax.

---

invested identical amounts in the assets which produced their respective incomes, could have completely different tax liabilities after distributing assets representing the same level of corporate investment. The disparate treatment would not arise from any differences in their tax situation during the tax year in question, but from the fact that the assets which they had distributed had appreciated at different rates during the period prior to that tax year.

Since we think the regulation in question is entirely consistent with the objectives and terms of the revenue act, we hold that the district court was correct in sustaining the validity of this regulation against appellants' attack and in rejecting appellants' claim for a refund.

*Affirmed.*