C. BLAKE McDOWELL, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3852–76.   Filed March 30, 1977.

*C. Blake McDowell, Jr.,* and *Gilbert V. Kelling, Jr.,* for the petitioner.

*William P. McKeithan,* for the respondent.

### OPINION

TANNENWALD, *Judge:* Respondent determined the following deficiencies representing personal holding company taxes asserted to be due from petitioner:

| Year | Deficiency |
| --- | --- |
| 1972 | $12,504.18 |
| 1973 | 58,740.42 |

This matter is before the Court on petitioner's motion for judgment on the pleadings. Respondent has admitted all facts alleged in the petition. A hearing on petitioner's motion was conducted by Special Trial Judge Lehman C. Aarons and the Court has had the benefit of his analysis in reaching its decision.

Petitioner is a corporation organized under the laws of Ohio, with its principal office in Akron, Ohio, at the time of the filing of the petition herein. It timely filed Federal income tax returns for the calendar years in question with the Internal Revenue Service Center at Cincinnati, Ohio.

On November 19, 1974, there was a determination, within the meaning of section 547(c),[1] that petitioner was liable for the personal holding company tax for 1972 and 1973 in the amounts of $15,364.13 and $59,383.02, respectively. Pursuant to resolution of petitioner's board of directors, timely deficiency dividends were paid to petitioner's shareholders (all of whom were noncorporate shareholders) in the amount of $3,881.64 in cash and in shares of stock of another corporation having an adjusted basis of $1,122 to petitioner and an aggregate fair market value on the dates of distribution of $102,900.

Petitioner claimed a deficiency dividend deduction against its personal holding company income under section 547 measured by the fair market value of the distributed stock. Respondent determined that petitioner's deduction should be limited to its adjusted basis in respect of the property distributed, in accordance with section 1.562–1(a), Income Tax Regs., which provides:

If a dividend is paid in property (other than money) the amount of the dividends paid deduction with respect to such property shall be the adjusted basis of the property in the hands of the distributing corporation at the time of the distribution. * * *

The sole issue before us is the validity of the foregoing regulation. It is a case of first impression for this Court, although the identical issue has been the subject of conflicting decisions by two Courts of Appeals. *Fulman v. United States*, 545 F.2d 268 (1st Cir. 1976), sustaining the validity of the regulation, and *H. Wetter Manufacturing Co. v. United States*, 458 F.2d 1033 (6th Cir. 1972), holding the regulation invalid and sustaining the position taken by the petitioner herein.[2]

---

[1] Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.

[2] The issue involved herein is also pending in the Fifth Circuit. See *Gulf Inland Corp. v. United States*,      F.Supp.      (W.D. La. 1975), on appeal (5th Cir., Oct. 14, 1975). We note that *Wetter* dealt with a deduction under sec. 561 for a current dividend in kind rather than a deficiency dividend as is the case in *Fulman* and herein. But respondent's regulation is equally applicable to deductions for dividends

The standards for determining the validity of respondent's regulations are well established:

Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and * * * they constitute contemporaneous construction by those charged with administration of these statutes which should not be overruled except for weighty reasons. * * * [*Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948).]

Examining the statutory framework, we find that section 541 imposes a special tax on "undistributed personal holding company income (as defined by section 545)." Because a substantial purpose of this tax is to preclude the sheltering of substantial investment income in a corporate entity without distribution thereof to the individual shareholders (see, generally, Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 8.20 (3d ed. 1971)), section 545 defines undistributed personal holding company income as a corporation's taxable income after certain adjustments. Included in such adjustments is a deduction for "dividends paid * * * as defined in section 561." Similarly, section 547(a) provides for a deduction for deficiency dividends and section 547(d) defines deficiency dividends as "the amount of the dividends paid * * * which would have been includible in the computation of the deduction for dividends paid under section 561 for the taxable year with respect to which the liability for personal holding company tax exists, if distributed during such taxable year." Section 561(a)(1) provides for a deduction of "the dividends paid during the taxable year" and section 561(b) provides that "in determining the deduction for dividends paid, the rules provided in section 562 * * * shall be applicable." Completing the framework is section 562(a), which provides:

(a) GENERAL RULE.—For purposes of this part, the term "dividend" shall, except as otherwise provided in this section, include only dividends described in section 316 (relating to definition of dividends for purposes of corporate distributions).

Thus, even after undistributed personal holding company income has been determined, the corporate taxpayer can reduce or eliminate the sting of its tax liability in respect

---

paid under sec. 561 and sec. 547 (see sec. 1.547-2(a)(3), Income Tax Regs.), the only difference between the two types of dividends being the time when they are paid.

thereof by distributing a "deficiency dividend" as defined in section 547(d) for which it is entitled to a deduction under section 547(a) in computing its personal holding company tax.

Neither section 561 (together with its definitional followup in section 562) nor section 547, providing for the dividends paid deduction and the deficiency dividends deduction, respectively, expresses any valuation procedure for determining the *amount of the deduction* for dividends in kind.[3]

Section 562 explains that, in order to be a deductible "dividend," a distribution must be a dividend described in section 316. That section merely defines dividends by reference to their *source of payment*;[4] dividends are distributions from earnings and profits or, in the case of personal holding companies, "any distribution of property * * * made by the

---

[3] The former section speaks of a deduction for "the sum" of various dividends; the latter speaks of a deduction for "the amount of deficiency dividends."

[4] The pertinent portions of sec. 316 are:

SEC. 316. DIVIDEND DEFINED.

(a) GENERAL RULE.—For the purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

    (1) out of its earnings and profits accumulated after February 28, 1913, or

    (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

(b) SPECIAL RULES.—

    * * *

    (2) DISTRIBUTIONS BY PERSONAL HOLDING COMPANIES.—

      (A) In the case of a corporation which—

        (i) under the law applicable to the taxable year in which the distribution is made, is a personal holding company (as defined in section 542), or

        (ii) for the taxable year in respect of which the distribution is made under section 563(b) (relating to dividends paid after the close of the taxable year), or section 547 (relating to deficiency dividends), or the corresponding provisions of prior law, is a personal holding company under the law applicable to such taxable year,

the term "dividend" also means any distribution of property (whether or not a dividend as defined in subsection (a)) made by the corporation to its shareholders, to the extent of its undistributed personal holding company income (determined under section 545 without regard to distributions under this paragraph) for such year.

corporation to its shareholders, to the extent of its undistributed personal holding company income." See sec. 316(b)(2)(A).

*H. Wetter Manufacturing Co. v. United States, supra,* concluded that, by this language, Congress clearly and unambiguously provided for a dividends-paid deduction[5] in the amount of the fair market value of the property distributed, when such language is read in conjunction with section 301, which provides that the amount of a dividend in kind to a noncorporate distributee is its fair market value in the distributee's hands.

We think neither section 316 nor section 301 compels this result. The language of section 316 upon which the Sixth Circuit focuses derives from section 186 of the Revenue Act of 1942, ch. 619, 56 Stat. 798, 895–896, which added the language to section 115(a) of the Internal Revenue Code of 1939. The reason for the addition of such language to the tax laws was merely to provide a *source* for dividend distributions by a personal holding company other than its earnings and profits. Because of differences in the computation of ordinary net income and undistributed personal holding company income, the possibility that a corporation could have undistributed personal holding company income in excess of earnings and profits meant that such corporation could not mitigate its personal holding company tax liability by making distributions if such distributions exceeded earnings and profits and did not qualify as taxable dividends in the recipient shareholders' hands. To remedy this "anomalous" result, Congress provided an additional *source* of dividend distributions to personal holding companies. See H. Rept. No. 2333, 77th Cong., 2d Sess. 53, 136–137 (1942), 1942–2 C.B. 372, 414, 473; S. Rept. No. 1631, 77th Cong., 2d Sess. 176–177 (1942), 1942–2 C.B. 504, 634–635.

The addition of this provision to the revenue laws had *no effect upon the amount* of a dividend distribution to be taken into account by a distributing personal holding company in computing what was then a dividends-paid credit. A specific statutory section (sec. 27(d), I.R.C. 1939) already provided:

---

[5] See n. 2 *supra.*

DIVIDENDS IN KIND.—If a dividend is paid in property other than money * * * the amount with respect thereto which shall be used in computing the basic surtax credit shall be the adjusted basis of the property in the hands of the corporation at the time of the payment, or the fair market value of the property at the time of payment, whichever is the lower.

Contemporaneously, section 506(c) of the Internal Revenue Code of 1939 specified that "the term 'deficiency dividends' mean the amount of the dividends paid * * * which are includible * * * in the computation of the basic surtax credit for the year of distribution."

Further, prior to 1942, Congress enacted section 115(j) of the 1939 Code, which provided that in the hands of a shareholder a dividend in kind was measured by fair market value at the time of distribution.

It is thus apparent that, from 1942 until 1954, sections 27(d), 115(a) and (j), and 506(c) of the 1939 Code existed side by side. It cannot be gainsaid that, if these provisions, and particularly sections 27(d) and 506(c) of the 1939 Code, had all been specifically incorporated into the 1954 Code revision, the issue involved herein would not have arisen and respondent's regulation would unquestionably set forth the correct rule. The difficulty arises because this did not occur. The provisions of old section 115(a) and (j) found their way into sections 316(b)(2)(A) and 301(b)(1)(A), respectively, of the 1954 Code. Neither old section 27(d) nor the cross reference language of section 506(c) was specifically set forth in the new Code.

The question, therefore, is whether the fact that these two latter sections did not find an in haec verba place in the 1954 revision sufficiently reveals a legislative intention to overturn the previously existing rule. We think not. Indeed, what little evidence is contained in that history points in the opposite direction. Thus, in discussing section 562, the House Ways and Means Committee stated (H.Rept. No. 1337, 83d Cong., 2d Sess. A181 (1954)):

Subsection (a) provides that the term "dividend" for purposes of this part shall include, except as otherwise provided in this section, only those dividends described in section 312 (relating to definition of dividends for purposes of corporate distributions). *The requirements of sections 27(d)*, (e), (f), and (i) *of existing law are incorporated in the definition of "dividend" in section 312, and accordingly are not restated in section 562.* [Emphasis added.]

The Senate Finance Committee made an almost identical statement (S. Rept. No. 1622, 83d Cong., 2d Sess. 325 (1954)):

This section conforms to section 562 of the House bill except for a clerical amendment.

Subsection (a) provides that the term "dividend" for purposes of this part shall include, except as otherwise provided in this section, only those dividends described in section 316 (relating to definition of dividends for purposes of corporate distributions). *The requirements of sections 27(d), (e), (f), and (i) of existing law are contained in the definition of "dividend" in section 312, and accordingly are not restated in section 562.* [Emphasis added.]

Because section 312 of the House bill became section 316 of the Internal Revenue Code of 1954, there has been some ·speculation as to whether there was a typographical error in the second reference of the Senate report. See *Fulman v. United States,* 545 F.2d at 270 n.2, as well as the discussion in the District Court opinion (see 407 F.Supp. at 1039 n.5 (D. Mass. 1976)). In our view, it is unnecessary, for the purposes of decision herein, to resolve the editorial or printing conundrum thus posed. Clearly, any confusion thereby created cannot be said to evince an intent on the part of Congress to change or eliminate the rule laid down by section 27(d) of the 1939 Code. Indeed, whether Congress was referring to section 312 or section 316, the committee language that "the requirements of [section] 27(d) * * * of existing law are incorporated [contained]" not only does not hint of any change but indicates the belief that the old rule would continue to be applied.

Moreover, such change or elimination would have been a substantial departure from the prior treatment of personal holding companies. At least where the adjusted basis of distributed property is less than its fair market value at the time of distribution, personal holding companies would have been treated far more generously than in the past and the aggregate tax bite could have been sharply reduced by making deficiency dividends in kind. Certainly, Congress has not otherwise indicated its intent to extend such generous treatment to personal holding companies.

A further indication of the consistency of the "adjusted basis" rule with the current statutory pattern is the "consent dividend" provision contained in section 565. Under that provision, Congress has indeed prescribed a way in which a

personal holding company may retain its realized earnings and still escape the impact of the penalty tax. But, under the consent dividend procedure, the shareholder pays the full tax at the individual level and ends up with nothing in his pocket other than a receipt for a capital contribution in the amount of the dividend that he did not in fact receive. The disposition sought by the petitioner here, if finally sanctioned by the courts, would enable a personal holding company (such as a family investment company) to retain its realized earnings in a far less painful manner, i.e., by actually distributing its appreciated securities and still having its retained earnings as working capital for further investments—without paying the penalty tax. Such a result should not prevail unless clearly mandated by the statute.

Thus, we are satisfied that sections 316 and 301 do not justify overturning respondent's regulations. Those sections had their genesis in the comparable provisions of the 1939 Code, which could not have enunciated any valuation procedure for a personal holding company dividends-paid deduction since a separate section articulated the statutory yardstick. Nothing in the legislative history indicates that sections 316 and 301 should be accorded an interpretation which would establish an entirely new measuring rod. In short, such sections do no more than had been done historically, namely, define dividends in respect of source of payment and determine the extent of a distributee shareholder's receipt.

Nor are we convinced that section 312(a)[6] necessarily provides the touchstone for decision. See *Fulman v. United States, supra.* That section prescribes adjusted basis as the appropriate measure of the charge to corporate earnings and profits for distributions in kind. The only significance of section 312 is that, unlike sections 316 and 301, it concerns the effect of a dividend on the earnings and profits of distributing corporations. Since section 312 is applicable to corporations generally and most corporations (unlike personal

---

[6] SEC. 312. EFFECT ON EARNINGS AND PROFITS.

(a) GENERAL RULE.—Except as otherwise provided in this section, on the distribution of property by a corporation with respect to its stock, the earnings and profits of the corporation (to the extent thereof) shall be decreased by the sum of—
    (1) the amount of money,
    (2) the principal amount of the obligations of such corporation, and
    (3) the adjusted basis of the other property, so distributed.

holding companies) merely account for but do not deduct dividends paid, it offers only indirect assistance in answering the question before us, although we believe it fair to observe that it has a greater bearing than either section 316 or 301.

We are unimpressed by the argument, essentially grounded on policy considerations, that so long as the distributee is taxed on the full value of the distribution, the distributing corporation should be allowed a deduction for the same amount. This argument was available prior to 1954 and yet for more than a decade Congress saw fit to measure the deduction in terms of the distributing corporation's investment rather than the distributee's taxable receipt. Indeed, there is a discernible rationale that this was done to effectuate a countervailing policy of taxing or forcing distribution of *income* rather than unrealized appreciation. See *Fulman v. United States, supra.* Cf. *Ivan Allen Co. v. United States,* 422 U.S. 617 (1975). Under these circumstances, we can perceive no basis for concluding that respondent's regulation is so unrealistic as to be unreasonable. Cf. *United States v. Cartwright,* 411 U.S. 546 (1973).

In sum, we are confronted with a situation where the Code is silent in terms of a specific direction in respect of the issue before us and the legislative history is at most ambiguous. Respondent's regulations represent a contemporaneous construction of the 1954 Code; they have been in effect since 1958[7] and are substantially a continuation of prior law.[8] In this context and applying the standard set forth in *Commissioner v. South Texas Lumber Co.,* 333 U.S. 496 (1948) (see p. 1045 *supra*), we conclude that the validity of respondent's regulation should be sustained.

Our conclusion does not, however, dictate that petitioner's motion should not be granted. An appeal from our decision herein lies to the Sixth Circuit Court of Appeals and that court has already decided the issue involved herein and invalidated respondent's regulation. *H. Wetter Manufacturing Co. v. United States, supra.* In accordance with the policy enunciated in *Jack E. Golsen,* 54 T.C. 742, 757 (1970), affd. on

---

[7] T.D. 6308, 1958-2 C.B. 279, 313, 338-339.

[8] Where fair market value exceeds adjusted basis, the regulations adopt the old rule. Where fair market value is less than adjusted basis, respondent would allow a larger deduction than that permitted under prior law.

the substantive issue 445 F.2d 985 (10th Cir. 1971), we have articulated our views on the merits, even though we are mandated by *Golsen* to apply the rule of *Wetter* herein. Cf. *Of Course, Inc.,* 59 T.C. 146, 148 (1972), revd. on substantive grounds 499 F.2d 754 (4th Cir. 1974), where there was a conflict among the Courts of Appeals and we took issue with the Court of Appeals to which the appeal therein lay, adhered to our previously expressed position which that court had previously reversed, and persuaded the Court of Appeals to change its position.

In accordance with the foregoing, petitioner's motion for judgment on the pleadings will be granted.

> *An appropriate order and decision will be entered.*

Reviewed by the Court.

DRENNEN, *J.,* concurring: I agree with the result reached in the majority opinion because it is mandated by the rule established by *Jack E. Golsen,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), and the conclusion reached by the Sixth Circuit in *H. Wetter Manufacturing Co. v. United States,* 458 F.2d 1033 (6th Cir. 1972), since an appeal from this case would lie in the Sixth Circuit. However, I do not necessarily agree with the conclusion reached by the majority opinion on the merits of the issue presented, and I believe it is unfortunate that we have chosen this case to express for the first time the views of this Court on that important and complex issue. It would be difficult to determine from the vote on the majority opinion how many Judges voted favorably because of the *Golsen* rule and how many voted favorably on the treatment of the issue involved. I prefer to reserve judgment on the merits of the issue and have it considered by this Court in a case wherein the result is not foreordained by the *Golsen* rule and there would be more incentive for the petitioner and the Judges of this Court to argue the merits of the issue.

FAY, *J.,* agrees with this concurring opinion.

GOFFE, *J.*, concurring: I agree with the majority that petitioner's motion for summary judgment must be granted by reason of the policy enunciated in *Jack E. Golsen,* 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971), because an appeal in the instant case would lie to the Sixth Circuit which has decided the identical issue favorably to petitioner. *H. Wetter Manufacturing Co. v. United States,* 458 F.2d 1033 (6th Cir. 1972). Because the majority has undertaken to express this Court's view as to *Wetter* and the conflicting view of the First Circuit in *Fulman v. United States,* 545 F.2d 268 (1st Cir. 1976), it is incumbent upon me to express the view that *Wetter* is correct in order that there be no misapprehension that the view of the Tax Court is unanimous.

The majority, following *Fulman,* bases its analysis on murky legislative history occurring in 1939. The primary fault in such analysis is that it does not go back far enough in the legislative history. Moreover, it is not consistent with the overall purpose of the personal holding company tax. An analysis of the purpose and complete history of the personal holding company tax, on the other hand, amply supports a finding that section 1.562–1(a), Income Tax Regs., is invalid in holding that the dividends-paid deduction is limited in amount to the basis of the property in the hands of the personal holding company, rather than its fair market value. *Wetter,* therefore, reaches the proper result and the Tax Court should follow *Wetter,* and *Gulf Inland Corp. v. United States,* an unreported case (W.D. La. 1975, 36 AFTR 2d 75–5511, 75–2 USTC par. 9620), on appeal to the Fifth Circuit.

The present personal holding company tax and the accumulated earnings tax are codified in part I, subchapter G of the Internal Revenue Code of 1954, entitled Corporations Used to Avoid Income Tax on Shareholders. The dividends-paid deduction, with which we are concerned here, and the dividends-paid deduction used in computing "accumulated taxable income" for the accumulated earnings tax are both determined under section 561 of the Code. The codification under such common heading and use of the same section (561) for the dividends-paid deduction is not accidental. The two penalty taxes were enacted to prevent individuals in high surtax brackets from shielding their personal income from higher individual rates through the use of a corporate device

which enabled taxation of that income at the flat corporate rates. The accumulated earnings tax, enacted in the Revenue Act of 1921, required a finding of a tax-avoidance purpose in the accumulation; thus it was inadequate to attack the "incorporated pocketbooks." Congress responded in 1934 with the personal holding company tax. Clearly, therefore, the purpose of the personal holding company tax was to strengthen the means of taxing certain undistributed corporate earnings at rates above the corporate tax rates. *Maryland Land & Transportation Corp.*, 40 B.T.A. 1067, 1068 (1939). The personal holding company tax, automatic and drastic in operation, sought to prevent tax avoidance described as follows by Sherman in "Taxation of Corporations Used to Avoid Taxes Upon Stockholders," 13 Taxes 19, 20 (1935):

Essentially this method of tax avoidance does not effect a complete avoidance of tax on the part of the individual stockholder, but merely a postponement or deferment of part of the tax. For, if the holding company should distribute its earnings or surplus in future years, the stockholder would then have to pay a surtax on the dividends that he received. However, a complete or partial avoidance of tax may ensue upon the happening of any of the following events:

1. If the corporation should spread the distribution of its annual income over a series of years, a real saving in tax would accrue to the stockholder from the mere fact that his distributive share of the income would fall in the lower surtax brackets.

2. If the corporation should time the distribution of its income so that it is made during a year when the stockholder has personal losses or other deductions to offset against the dividend received, a real saving in tax would result.

3. If there should be a reduction in tax rates upon individual incomes during any future year, the distribution of the corporate income in such year would result in an actual saving to the stockholder.

4. If the corporation should incur any losses on its investments or otherwise, which deplete the earnings or surplus accumulated during preceding years, there will be an avoidance of tax, for the Government will be deprived of the surtax which the stockholder would have had to pay, had the corporation made a distribution of its annual income in the year when the same was earned. * * *

*Sanford Corp. v. Commissioner*, 106 F.2d 882, 883 (3d Cir. 1939), affg. 38 B.T.A. 139 (1938), cert. denied 309 U.S. 659 (1940).

When the personal holding company tax was enacted in the Revenue Act of 1934, two deductions were allowed from "adjusted net income": (1) An arbitrary allowance of 10

percent to allow the corporation a reserve for contingencies and (2) a deduction for dividends paid *to prevent the additional tax from applying to sums actually distributed.* H. Rept. No. 704, 73d Cong., 2d Sess. 11 (1934). The term "actually distributed" clearly indicates an intent to allow the dividends-paid deduction to the extent of the fair market value of the property because the recipient must report that amount as dividend income. See sec. 301, I.R.C. 1954.

In 1936, an undistributed profits surtax on all corporations was enacted. The House version of the bill eliminated the personal holding company tax and in the House version section 27 was proposed. It defined the dividends-paid credit for purposes of the undistributed profits tax, allowing a credit for dividends paid in the amount of the basis or fair market value of the property, whichever is lower. The House Ways and Means Subcommittee included the following example to demonstrate how tax was being avoided:

Case No. 4

Corporation A owns all the stock of Corporation B. Corporation B has a surplus of $1,000,000 and included among its assets are distillers' warehouse receipts, which cost it $100,000, but which are now worth $500,000. It is desired to sell these warehouse receipts without the payment of any tax. This can be done in the following manner:

Corporation B distributes the warehouse receipts to Corporation A by declaring a dividend in kind. This being a dividend from one corporation to another, corporation A pays no tax upon its receipt.

The cost basis for these warehouse receipts in A's hands is now $500,000. A sells the warehouse receipts for $500,000 (its costs basis) and, therefore, pays no tax on the sale. [Report, Ways and Means Subcommittee, 73d Cong., 2d Sess., H. Rept. Dec. 4, 1933, at 40.]

See Broenen & Preston, "Undistributed PHC Income: The Sixth Circuit in H. Wetter Mfg. Co. Is Historically Sound," 2 J. Corporate Taxation 69, 72 (1975). It is apparent that the example does not apply to the personal holding company tax because the recipient of a dividend from a personal holding company is taxed on the dividend at its fair market value.

When the bill which became the Revenue Act of 1936 reached the Senate, the personal holding company tax was restored and section 27, which was drafted to apply to the undistributed profits tax, became applicable to the personal holding company tax. Curiously, however, there is nothing in the committee reports to indicate why it was made applicable

or why such an important change in the former rule was made. S. Rept. No. 2156, 74th Cong., 2d Sess. (1936). The undistributed profits tax continued until 1939 and section 27 found its way into the Internal Revenue Code of 1939 without any indication of congressional intent. It was not, however, included in the Internal Revenue Code of 1954. Indeed, section 562, I. R. C. 1954, conforms to the original personal holding company tax provisions of the Revenue Act of 1934.

To hold that section 562 allows the deduction only to the extent of the basis (as sec. 1.562–1(a), Income Tax Regs., provides) because the earnings and profits of the personal holding company are reduced by the adjusted basis of the property (sec. 312(a)(3), I.R.C. 1954) is not consistent. Section 312(b)(3) provides for a reduction of earnings and profits only to the extent of the basis of the property distributed, regardless of its fair market value. Section 321 is merely a device to provide a source for dividends at the shareholder level; it provides no useful analogy in resolving whether a tax should be levied at the corporate level. Moreover, the fallacy in the reasoning of the majority and the Court of Appeals in *Fulman v. United States, supra,* is, what happens if the personal holding company distributes property which has a fair market value *lower* than its basis? The shareholder would report the fair market value as dividend income and, applying section 1.562–1(a), Income Tax Regs., the corporation would receive a dividends-paid deduction in the amount of the basis. Thus, the personal holding company would receive a dividends-paid deduction in excess of the dividend reported by the shareholder. This demonstrates the need that the interpretation of section 562 must coincide with section 301(b)(1) and fair market value must be the measure to the personal holding company for its deduction just as it measures the amount of dividend income to the noncorporate shareholder.

The precise question of distribution of property which has depreciated in value was before this Court in *General Securities Co.,* 42 B.T.A. 754 (1940), affd. 123 F.2d 192 (10th Cir. 1941). That case involved interpretation of the personal holding company tax as it existed in 1934, which in this regard is no different from the way it exists at the present time. The taxpayer personal holding company distributed property to its shareholders having a fair market value of

$1,068.33 but a basis of $110,654.64. The taxpayer claimed a dividends-paid deduction for the property distributed of $110,654.64, which the Commissioner disallowed. We held that the dividends-paid deduction was allowable only in the amount which the shareholders were required to report as dividend income, $1,068.33. We examined the legislative history and purposes of the personal holding company tax.

We think the Congressional reports from which we have quoted show that it was the intent of Congress that *a personal holding company coming within the provisions of the act should receive a deduction against its "adjusted net income" for "dividends paid" of an amount equal to the amount of such dividends taxable to the stockholders.* If this were not true, petitioner would receive a deduction for dividends paid of $103,898.17, which would be taxable to the stockholders only to the extent of $1,068.33. This result, we think, would be contrary to the intent of Congress.

In *Foley Securities Corporation,* 38 B.T.A. 1036, in discussing the House committee report on H.R. 7835, we said, among other things:

"But the report continues: 'The stockholders will, of course, be subject to the graduated surtaxes upon such distributions', which demonstrates that the distributions referred to were those on which the stockholders would be taxable."

We went on to hold in that case that, of a distribution of $42,375 which the taxpayer made to its stockholders in the taxable year 1934, only $26,258.97 could be deducted in computing the taxpayer's "undistributed adjusted net income" under section 351(b) because only that amount was a taxable dividend to the stockholders.

In the instant case, regardless of the cost of the stock which petitioner distributed to its stockholders in 1934 and regardless of the way it entered it on its books, only $1,068.33 can be taxed to the stockholders, and we hold that is all that petitioner can deduct as "dividends paid" in computing its "undistributed adjusted net income." Petitioner argues that it could have sold the stock to outsiders for $1,068.33 and distributed that amount of cash to its stockholders and in that way could have realized a loss of the difference between its adjusted cost and the selling price and could have deducted this loss on its income tax return and the same tax result would have been attained as petitioner contends for in the present proceeding. Perhaps that is true, but it takes no argument to establish the proposition that tax consequences are frequently very different on one state of facts from what they are on another state of facts. So it is in the instant case.

Congress has prescribed how a personal holding company shall be taxed and what deductions it shall receive in determining its "undistributed adjusted net income" and we must give effect to those provisions even though the taxpayer personal holding company might have avoided the surtax if it had handled its transactions in some other way. [42 B.T.A. at 758. Emphasis added.]

In affirming our decision the 10th Circuit specifically agreed with our analysis that the amount of the dividends-paid deduction should coincide with the amount reported by the shareholders as dividends.

The reason for the allowance of the dividend deduction is that the shareholder, provided he receives income in the requisite amount, is subject to graduated surtaxes on the dividends distributed to him, and it would be unfair also to subject dividends to a surtax against the corporation.[4]

---

[4] Report of the Ways and Means Committee of the House, H. Rep. No. 704, 73d Cong., 2d Sess., pp. 11, 12 (1939-1 Cum. Bull., Part 2, 554, 563); Report of the Senate Committee on Finance, S. Rep. No. 558, 73d Cong., 2d Sess., pp. 13-15 (1939-1 Cum. Bull., Part 2, 586, 596).

*General Securities Co. v. Commissioner*, 123 F.2d 192, 194 (10th Cir. 1941).

In *Foley Securities Corp.*, 38 B.T.A. 1036 (1938), again interpreting the 1934 personal holding company tax, we had to decide whether the personal holding company should be allowed a dividends-paid deduction for dividends which were not taxable in full to its shareholders because of the lack of earnings and profits. We held that the dividends-paid deduction provision and the provision requiring inclusion of dividends in the shareholders' income were in pari materia and that "On such distributions out of current income as are not taxable to the shareholders because of the definition of 'dividend' in section 115(a), that purpose can only be effectuated by giving the term dividend the same interpretation and imposing the surtax on the corporation." (38 B.T.A. at 1038.)

Finally, the Court of Appeals in *Fulman* and the majority herein find some justification for the result they would reach by noting that the regulations would prevent the distribution of accumulated gain; we can perceive no reason in logic or policy why such a distribution should be prevented. The personal holding company mechanism does not mandate a distribution of currently earned income; rather, a tax is imposed on "undistributed personal holding company income." Thus a corporation with substantial taxable income may not need to make a dividend distribution if it has a section 564 dividend carryover; in the same vein a corporation with little taxable income may have to make such a

distribution if its taxable income reflects a section 243 dividend-received deduction. See Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 8.25, p. 8–51 (3d ed. 1971).

It is clear, therefore, that we interpreted the 1934 Act to mean that the amount of the dividends-paid deduction should equal the amount of the dividend reported by the shareholders and that the limitation on the dividends-paid deduction to the fair market value or basis, whichever is lower, was never intended to apply to the personal holding company tax. If any conclusion can be reached as to why Congress deleted the limitation when it enacted the 1954 Code, it is probably because it never should have been applied to the personal holding company tax. Accordingly, I agree with the result reached by the Sixth Circuit in *H. Wetter Manufacturing Co. v. United States*, 458 F.2d 1033 (6th Cir. 1972).

DAWSON and WILES, *JJ.*, agree with this concurring opinion.

WILBUR, *J.*, concurring: I concur on the basis of *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). On the facts before us, petitioner has little incentive to do more than simply cite *Golsen* and *H. Wetter Manufacturing Co. v. United States*, 458 F.2d 1033 (6th Cir. 1972), which as the majority recognizes, requires that petitioner's motion for judgment on the pleadings be granted. Nevertheless, the majority states, "we have articulated our views on the merits, even though we are mandated by *Golsen* to apply the rule of *Wetter* herein."

The majority discusses no exigencies requiring that we include gratuitous essays in our opinions volunteering our views on the validity or invalidity of the regulations. Whatever value may accrue from this practice is far outweighed by the disadvantages of locking ourselves into a position on an important issue not really addressed by the adversary process in the proceedings before this Court.

FAY and IRWIN, *JJ.*, agree with this concurring opinion.