FULMAN ET AL., TRUSTEES *v.* UNITED STATES

No. 76–1137. Argued November 29, 1977—Decided February 22, 1978

*Daniel D. Levenson* argued the cause and filed briefs for petitioners.

*Michael L. Paup* argued the cause for the United States. With him on the brief were *Acting Solicitor General Friedman, Assistant Attorney General Ferguson, Stuart A. Smith,* and *Joseph L. Liegl.*

Mr. Justice Brennan delivered the opinion of the Court.

The question presented in this case is the validity of the provision of Treas. Reg. § 1.562–1 (a), 26 CFR § 1.562–1 (a) (1977), that a personal holding company's distribution of appreciated property to its shareholders results, under §§ 561 and 562 of the Internal Revenue Code of 1954, 26 U. S. C. §§ 561 and 562, in a dividends-paid deduction limited to an amount that is "the adjusted basis of the property in the hands of the distributing corporation at the time of the distribution."[1] The Court of Appeals for the First Circuit sustained the validity of the provision in this case, 545 F. 2d 268 (1976), disagreeing with the Court of Appeals for the Sixth Circuit in *H. Wetter Mfg. Co.* v. *United States,* 458 F. 2d 1033 (1972), which had concluded that the limitation on the dividends-paid deduction is invalid and that a personal holding company is entitled to a deduction equal in amount to the fair market

---

[1] "§ 561. Definition of deduction for dividends paid.

"(a) General rule.

"The deduction for dividends paid shall be the sum of—

"(1) the dividends paid during the taxable year,

. . . . .

"(b) Special rules applicable.

"(1) In determining the deduction for dividends paid, the rules provided in section 562 . . . shall be applicable."

"§ 562. Rules applicable in determining dividends eligible for dividends paid deduction.

"(a) General rule.

"For purposes of this part, the term 'dividend' shall, except as otherwise provided in this section, include only dividends described in section 316 . . . ."

"§ 1.562–1 Dividends for which the dividends paid deduction is allowable.

"(a) *General rule.* . . . If a dividend is paid in property (other than money) the amount of the dividends paid deduction with respect to such property shall be the adjusted basis of the property in the hands of the distributing corporation at the time of the distribution. . . ."

value of property distributed.[2] We granted certiorari to resolve the conflict. 431 U. S. 928 (1977). We agree with the Court of Appeals for the First Circuit that the limitation on the dividends-paid deduction provided by the regulations is valid, and therefore affirm its judgment.

## I

The maximum income tax rate applied to corporations has for many years been substantially below marginal tax rates applicable to high-income individuals. As early as 1913, Congress recognized that this disparity provided an incentive for individuals to create corporations solely to avoid taxes. In response Congress imposed a tax on the shareholders of any corporation "formed or fraudulently availed of" for the purpose of avoiding personal income taxes. Tariff Act of 1913, § II–A, Subdivision 2, 38 Stat. 166; see *Ivan Allen Co.* v. *United States,* 422 U. S. 617, 624–625, and n. 8 (1975). Section 220 of the Revenue Act of 1921, 42 Stat. 247, shifted the incidence of this tax to the corporation itself, where it has remained to this day. See *Ivan Allen Co.* v. *United States, supra,* at 625 n. 8.

Early statutes designed to combat abuse of the corporate form were not notably successful, however, and in 1934 Congress concluded that the "incorporated pocketbook"—a closely held corporation formed to receive passive investment property and to accumulate income accruing with respect to that property—had become a major vehicle of tax avoidance.[3]

---

[2] Accord, *Gulf Inland Corp.* v. *United States,* 75–2 USTC ¶ 9620 (WD La.), appeal docketed, No. 75–3767 (CA5 1975). But see *C. Blake McDowell, Inc.* v. *Commissioner,* 67 T. C. 1043 (1977).

[3] See H. R. Rep. No. 704, 73d Cong., 2d Sess., pt. 1, pp. 11–12 (1934); Subcommittee of House Committee on Ways and Means, 73d Cong., 2d Sess., Preliminary Report on Prevention of Tax Avoidance 6–8 (Comm. Print 1934). For a history of the personal holding company tax, see Libin, Personal Holding Companies and the Revenue Act of 1964, 63 Mich. L. Rev. 421, 421–429 (1965).

Congress' response was the personal holding company tax, enacted in 1934, and now codified as §§ 541–547 and 561–565 of the Internal Revenue Code of 1954,[4] 26 U. S. C. §§ 541–547 and 561–565 (1970 ed. and Supp. V).

The object of the personal holding company tax is to force corporations which are "personal holding companies"[5] to pay in each tax year dividends at least equal to the corporation's undistributed personal holding company income—i. e., its adjusted taxable income less dividends paid to shareholders of the corporation, see § 545—thus ensuring that taxpayers cannot escape personal taxes by accumulating income at the corporate level. This object is effectuated by imposing on a personal holding company both the ordinary income tax applicable to its operation as a corporation and a penalty tax of 70% on its undistributed personal holding company income. See §§ 541, 545, 561. Since the penalty tax rate equals or exceeds the highest rate applicable to individual taxpayers, see 26 U. S. C. § 1 (1970 ed. and Supp. V), it will generally be in the interest of those controlling the personal holding company to distribute all personal holding company income, thereby avoiding the 70% tax at the corporate level by reducing to zero the tax base against which it is applied.[6]

## II

Petitioners are the successors to Pierce Investment Corp. In 1966 the Commissioner audited Pierce and determined that it was a personal holding company for the tax years 1959, 1960,

---

[4] Sections 561–565 also define the dividends-paid deduction used in the accumulated earnings tax, 26 U. S. C. §§ 531–537 (1970 ed. and Supp. V).

[5] A personal holding company is defined as a corporation at least 60% of whose adjusted ordinary gross income is personal holding company income, and 50% of whose stock is owned by five or fewer persons. 26 U. S. C. § 542 (a). Personal holding company income is income from passive investment property such as dividends, rents, or royalties. § 543.

[6] Such dividends would, of course, be taxable to noncorporate shareholders at their fair market value. See 26 U. S. C. § 301 (b) (1) (A).

1962, and 1963. Deficiencies in personal holding company taxes of $26,571.30 were assessed against Pierce. In response to the audit, Pierce entered an agreement with the Commissioner pursuant to § 547 of the Code which provides that a corporation in Pierce's position may enter such an agreement, acknowledging its deficiency and personal holding company status, and may within 90 days thereafter make "deficiency dividend" payments that become a deduction against personal holding company income in the years for which a deficiency was determined and reduce that deficiency. Shares of stock Pierce held in other companies were promptly distributed as deficiency dividends. The fair market value of this stock at the time of distribution is agreed to have been $32,535; its adjusted tax basis, $18,725.11.

Pierce then filed a claim for a deficiency-dividend deduction, as required by § 547 (e), indicating that the value of dividends distributed for the tax years in question was $32,535. The Commissioner, relying on Treas. Reg. § 1.562–1 (a), allowed this claim only to the extent of Pierce's adjusted basis in the stock, and he determined a new deficiency after reducing Pierce's personal holding company income by the amount of the deficiency dividends allowed. Pierce paid this tax and the Commissioner denied its claim for a refund.

Petitioners as Pierce's successors thereafter brought a refund suit in the United States District Court for the District of Massachusetts, arguing that the deficiency dividends should have been valued at their fair market value. The District Court on cross-motions for summary judgment denied relief, 407 F. Supp. 1039 (1976), and the Court of Appeals for the First Circuit affirmed. Each court found the Treasury Regulation to be a reasonable interpretation of the personal holding company tax statute, and each expressly refused to follow the contrary holding of *H. Wetter Mfg. Co.* v. *United States, supra.*[7] Accordingly a refund was denied.

---

[7] In *Wetter*, the Sixth Circuit, adopting a "plain meaning" rule, held

## III

"[I]t is fundamental . . . that as 'contemporaneous constructions by those charged with administration of' the Code, [Treasury] Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes,' and 'should not be overruled except for weighty reasons.'" *Bingler v. Johnson,* 394 U. S. 741, 749–750 (1969), quoting *Commissioner v. South Texas Lumber Co.,* 333 U. S. 496, 501 (1948); accord, *United States v. Correll,* 389 U. S. 299, 306–307 (1967). This rule of deference is particularly appropriate here,[8] since, while obviously some rule of valuation must be applied, Congress, as we shall see, failed expressly to provide one. See *United States v. Correll, supra;* 26 U. S. C. § 7805 (a).

Section 547 (a) of the Code requires that a taxpayer who like Pierce pays dividends after a determination of liability by the Commissioner "shall be allowed" "a deduction . . . for the amount of deficiency dividends (as defined in subsection (d)) for the purpose of determining the personal holding company tax." Subsection 547 (d) in turn provides that

> "the term 'deficiency dividends' means the amount of the dividends paid by the corporation . . . , which would have been includible in the computation of the deduction for dividends paid under section 561 for the taxable year with respect to which the liability for personal holding

---

that the 1954 Code required the rule of 26 U. S. C. § 301 to be used in establishing the value of the dividend deduction under the personal holding company tax. The meaning of the 1954 Code is, however, anything but plain.

[8] Although we have said that penalty tax provisions are to be strictly construed, see *Ivan Allen Co. v. United States,* 422 U. S. 617, 627 (1975); *Commissioner v. Acker,* 361 U. S. 87, 91 (1959), this rule of construction does not apply to the personal holding company tax since any penalty can be easily avoided by following—as petitioners' predecessor did—the guidelines set out in 26 U. S. C. § 547.

company tax exists, if distributed during such taxable year."

Continuing this chain of definitions, § 561 (a) provides that the deduction for dividends "shall be the sum of," *inter alia,* dividends paid during the taxable year; and § 561 (b)(1) points to § 562 as the source of a rule for valuing such dividends. Section 562, however, provides only exceptions to a basic rule said to be provided by § 316 of the Code, 26 U. S. C. § 316. But when we turn to § 316, the trail of definitions finally turns cold, for that section states only that a dividend is a "distribution of property made by a corporation to its shareholders" out of current or accumulated earnings or, in the case of personal holding companies, out of its current personal holding company income. Inexplicably, moreover, the draftsmen refer us back to § 562 for "[r]ules applicable in determining dividends eligible for dividends paid credit deduction." See Cross References following § 316.

Petitioners suggest that the way out of this circularity is to adopt the valuation rules for distributions of property found in § 301 of the Code, 26 U. S. C. § 301. We cannot agree, for § 301 deals not with the problem of valuing the distribution with respect to the *distributing corporation,* but establishes rules governing the valuation with respect to *distributees.* This is not to deny the logical force of petitioners' argument that, since the purpose of the personal holding company tax is to force individuals to include personal holding company income in their individual returns, the corporate distributor should get a deduction at the corporate level equal to the income generated by the distribution at the shareholder level as defined by § 301, that is, the fair market value of the appreciated property in this case.[9] See 26 U. S. C. § 301 (b)

---

[9] Petitioners also argue that the valuation standard provided by § 301 was expressly adopted by the House as the standard to be used in establishing the value of a dividend with respect to a corporation as well as to a distributee-shareholder. In H. R. 8300, 83d Cong., 2d Sess. (1954), the

(1)(A). Indeed, *H. Wetter Mfg. Co.* v. *United States,* 458 F. 2d 1033 (1972), and *Gulf Inland Corp.* v. *United States,* 75–2 USTC ¶ 9620 (WD La.), appeal docketed, No. 75–3767

forerunner of the Internal Revenue Code of 1954, § 562 (a) referred to § 312 which stated: "The term 'dividend' when used in this subtitle means a distribution *(as determined in section 301 (a))* . . . .". (Emphasis added.) Section 301 (a) defined a "distribution" as "the amount of money . . . and the fair market value of securities and property received" by a distributee. This, petitioners conclude, shows that Congress meant to use the standard of § 301, now codified as 26 U. S. C. § 301, as the standard for valuing distributions of property with respect to both the distributing corporation and the distributee-shareholder.

The language in § 312 italicized above was deleted by the Senate, however, and does not appear in § 316 of the 1954 Code—which corresponds to § 312 of H. R. 8300, *supra.* Moreover, as explained *infra,* at 536–538, the House Report states that the rule of § 27 (c) of the Revenue Act of 1936, 49 Stat. 1665, was incorporated in the 1954 Code. If that is indeed the case, then § 301 cannot be the section that governed valuation of property dividends under § 562 (a) of H. R. 8300, since § 301 does not embody the valuation rule of § 27 (c) with respect to distributions to noncorporate shareholders. Instead, H. R. 8300, § 301 (a), mandates the use of fair market value without regard to basis when the distributee is a noncorporate shareholder, whereas § 27 (c) mandated the use of the *lower* of basis or fair market value. The rule of § 27 (c) is used in H. R. 8300 only with respect to corporate distributees, taxpayers who were *not* the target of the personal holding company tax. There is, therefore, no unambiguous inference to be drawn from the linkage between §§ 301, 312, and 562 of the House bill. See also nn. 13–14, *infra.*

Finally, petitioners argue that our decision in *Ivan Allen Co.* v. *United States, supra,* supports their contention that fair market value must be the measure of property dividends. But this is not the case. As we made abundantly clear in *Ivan Allen,* the fair market value of liquid assets figures *only* in calculating whether "earnings and profits . . . [have been] permitted to accumulate beyond the reasonable needs of the business." 26 U. S. C. § 533 (a). Unrealized appreciation does not figure in the tax base to which the accumulated earnings tax applies. See 422 U. S., at 627, 633. Since *Ivan Allen* thus holds that appreciation does *not* figure in the accumulated earnings tax base, there is no justification for reasoning from that opinion that such appreciation must nonetheless figure in the dividends to be subtracted from that base.

(CA5 1975), have taken the view urged by petitioners, and but for the Regulation, the argument might well prevail.[10] But, as we have indicated, the issue before us is *not* how *we* might resolve the statutory ambiguity in the first instance, but whether there is any reasonable basis for the resolution embodied in the Commissioner's Regulation. We conclude that there is.

In the Revenue Act of 1936, Congress enacted a surtax on undistributed profits intended to supplement the 1934 enactment of the personal holding company tax. In § 27 (c) of the 1936 Act, 49 Stat. 1665, later codified as § 27 (d) of the Internal Revenue Code of 1939, 53 Stat. 20, Congress expressly provided the "adjusted basis" measure for valuation with respect to the distributing corporation of dividends paid in appreciated property rather than money:

> "If a dividend is paid in property other than money . . . the dividends paid credit with respect thereto shall be the adjusted basis of the property in the hands of the corporation at the time of the payment, or the fair market value of the property at the time of the payment, whichever is the lower."

Although this section may not have been enacted with the personal holding company tax primarily in mind,[11] § 351 (b) (2)(C) of the 1936 Act [12] nonetheless expressly provided that the dividends-paid credit for that tax would be governed by § 27 (c). At the same time, in contrast, the 1936 Act provided that property distributed as a dividend would be valued with

---

[10] See generally Drake, Distributions in Kind and the Dividends Paid Deduction—Conflict in the Circuits, 1977 B. Y. U. L. Rev. 45.

[11] Section 27 was added as part of a general revision of the undistributed profits and accumulated earnings taxes. See S. Rep. No. 2156, 74th Cong., 2d Sess., 12–13, 16–18 (1936). There is no discussion in the legislative history of the 1936 Act of the reason for applying § 27 to personal holding companies.

[12] 49 Stat. 1732.

respect to distributees at its fair market value. See Revenue Act of 1936, § 115 (j), 49 Stat. 1689.

The relevant provisions of the 1936 Revenue Act were carried over without material change into the Internal Revenue Code of 1939. See §§ 27 (d), 115 (j), of that Code, 53 Stat. 20, 48. Thus, the logical symmetry between the gain recognized at the shareholder level and the dividend credit allowed at the corporate level, which petitioners argue should be the touchstone for our decision, was not part of the scheme of the Internal Revenue Code from 1936 to 1954.

Nor can Congress' failure to re-enact a counterpart to § 27 (c) in the 1954 Code be read unambiguously to indicate that Congress had abandoned the "adjusted basis" measure in favor of the "fair market value" measure. In describing the purpose of § 562 (a), which defines dividends eligible for deduction for personal holding company tax purposes, the Senate Finance Committee explained:

> "Subsection (a) provides that the term 'dividend' for purposes of this part shall include, except as otherwise provided in this section, only those dividends described in section 316 . . . . The requirements of sections 27 (d), (e), (f), and (i) of existing law [Internal Revenue Code of 1939, as amended] are contained in the definition of 'dividend' in section 312, and accordingly are not restated in section 562." S. Rep. No. 1622, 83d Cong., 2d Sess., 325 (1954).

The Report of the House Ways and Means Committee is *in haec verba*, except that it says that the requirements of §§ 27 (d), (e), (f), and (i) are contained in what is now § 316 of the 1954 Code.[13] See H. R. Rep. No. 1337, 83d Cong., 2d Sess.,

---

[13] The Court of Appeals theorized that this discrepancy may have been due to a typographical error in the Senate Report. As the bill which was to become the 1954 Code was passed by the House, the provisions of § 316 of the Code were set out as § 312. The Senate renumbered the bill, but adopted the discussion of the House Report essentially verbatim,

A181 (1954). The discrepancy between the House and Senate Reports is not material, however, since, as we have explained, there is no way to reach the result of § 27 (c) by following *any* path through the language of the 1954 Code.[14] In light of the failure of the language of the Code to create the result of § 27 (c), the statement in the House and Senate Reports could be read to indicate that Congress meant to incorporate only so much of § 27 as was actually enacted—that is, none of it. But this meaning is not compelled, and we cannot say that the language of the Reports cannot be read to evince Congress' intention, albeit erroneously abandoned in execution, to retain the "adjusted basis" valuation rule of § 27 (c).

At the least, it is not unreasonable for the Commissioner to have assumed that Congress intended to carry forward the law existing prior to the 1954 Code with respect to the measure of valuation. As we said in *United States* v. *Ryder,* 110 U. S. 729, 740 (1884): "It will not be inferred that the legislature, in revising and consolidating the laws, intended to change their policy, unless such intention be clearly expressed." Accord, *Aberdeen & Rockfish R. Co.* v. *SCRAP,* 422 U. S. 289, 309 n. 12 (1975); *Muniz* v. *Hoffman,* 422 U. S. 454, 467–472 (1975); *Fourco Glass Co.* v. *Transmirra Corp.,* 353 U. S. 222,

---

possibly failing to correct all instances where section numbers had changed. See 545 F. 2d, at 270 n. 2.

[14] If one assumes that S. Rep. No. 1622, 83d Cong., 2d Sess. (1954), is correct in stating that Congress re-enacted § 27 (c) of the Revenue Act of 1936 as § 312 of the 1954 Code, 26 U. S. C. § 312, but see n. 13, *supra,* then Treas. Reg. 1.562–1 (a), 26 CFR § 1.562–1 (a) (1977), must be upheld because § 312 (a) (3) provides a dividend valuation rule identical to that of § 27 (c). But § 312 is on its face addressed only to the narrow issue of the effect of dividends on corporate earnings and profits, an issue unrelated to the personal holding company tax. Therefore § 312 is no more likely to be the correct locus of the re-enactment of § 27 (c) than § 301 of the Code. Moreover, even if the Senate did intend § 312 to be the locus of the rule of § 27 (c), ambiguity remains because the House, if it put § 27 (c) anywhere, put it in §§ 301 and 316 of the Code. See n. 9, *supra.*

227 (1957). If we will not read legislation to abandon previously prevailing law when, as here, a recodification of law is incomplete or departs substantially and without explanation from prior law, we cannot conclude that the Commissioner may not adopt a similar rationale in drafting his rule.[15] In any case, given the law under the 1939 Code and the ambiguity surrounding the House and Senate Reports on § 562, it is impossible to identify in this case any "weighty reasons" that would justify setting aside the Treasury Regulation.

*Affirmed.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

MR. JUSTICE STEVENS, concurring in the judgment and concurring in part.

The only portion of the Court's opinion which I am unable to join is that quoted by MR. JUSTICE POWELL in dissent. I do not see the ineluctable logical need to equate the amount of income received by the shareholder distributee with the amount of the deduction allowed the corporate distributor. In my judgment market value is the appropriate measure of the recipient's income, and adjusted basis is the appropriate debit on the corporation's books.

MR. JUSTICE POWELL, dissenting.

The Court's opinion, with commendable candor, recognizes that logic supports petitioners' position:

"[We do] not . . . deny the logical force of petitioners'

---

[15] Treas. Reg. 1.562–1 (a), 26 CFR § 1.562–1 (a) (1977), does not, of course, correspond to § 27 (c) of the Revenue Act of 1936 in valuing *depreciated* property. The Treasury Regulation requires adjusted basis to be used in valuing all distributions of property; § 27 (c) provided that the

argument that, since the purpose of the personal holding company tax is to force individuals to include personal holding company income in their individual returns, the corporate distributor should get a deduction at the corporate level equal to the income generated by the distribution at the shareholder level as defined by § 301, that is, the fair market value of the appreciated property in this case. See 26 U. S. C. § 301 (b)(1)(A)." *Ante,* at 534–535.

The Court also recognizes the "circularity," *ante,* at 534, and the "ambiguity," *ante,* at 536, of the relevant provisions of the Internal Revenue Code, as well as the absence of any clarification thereof in the legislative history. The Court simply resolves the statutory jumble in favor of the Treasury Regulation.

It is virtually conceded that this result cannot be squared with the acknowledged purpose of the personal holding company tax. Where statutory ambiguity exists without clarification in the legislative history, a court should read the statute to accord with its manifest purpose. A regulation that defies logic, as well as the statutory purpose, merits little weight.

I find no answer in the Court's opinion to the arguments advanced by Professor Drake. See Drake, Distributions in Kind and Dividends Paid Deduction—Conflict in the Circuits, 1977 B. Y. U. L. Rev. 45. See also *H. Wetter Mfg. Co.* v. *United States,* 458 F. 2d 1033 (CA6 1972).*

I respectfully dissent.

_____

*lower* of adjusted basis or fair market value would be used. See *supra,* at 536. However, we have no occasion to pass on the validity of § 1.562–1 (a) as applied to depreciated property since, even if it should be invalid in that circumstance, this would not help petitioners in this case.

*I do not view this as a case that, under the Court's holding today, the Government "wins" and personal holding company taxpayers (other than petitioners) "lose." It is not at all clear to me that the Court's resolution of the statutory ambiguity will in the end increase the Government's

"take." The personal holding company device is used by a limited number of sophisticated taxpayers. Under the "adjusted basis" rule upheld by this decision, many of them will be able to schedule the distribution of appreciated and depreciated property in an advantageous manner. Cf. *General Securities Co.* v. *Commissioner,* 42 B. T. A. 754 (1940), aff'd, 123 F. 2d 192 (CA10 1941). I simply would have preferred a resolution that advanced the symmetry of the relevant Code provisions, see, *e. g.,* 26 U. S. C. §§ 301, 311, and one compatible with the plain purpose of the personal holding company tax.