PASQUALE N. CASSETTA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cassetta v. Commissioner
Docket No. 10581-76.
United States Tax Court
T.C. Memo 1979-384; 1979 Tax Ct. Memo LEXIS 139; 39 T.C.M. (CCH) 188; T.C.M. (RIA) 79384; September 19, 1979, Filed Archibald U. Braunfeld, for the petitioner. Ellis L. Reemer, for the respondent. TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined a deficiency of $9,650.77 in petitioner's income tax for 1971. The issues presented are (1) whether section 83 [1] applies to *140 a situation wherein restricted stock is received by an individual as a "finder's fee" and (2) if so, the amount of income to be included by petitioner in gross income and the proper taxable year of inclusion. All of the facts have been stipulated and are found accordingly. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. On the date on which the petition herein was filed, petitioner resided in Bronx, N.Y. He filed his income tax return for the year 1971 with the Internal Revenue Service Center, Andover, Mass.
During the taxable years 1970 and 1971, petitioner was employed by the Deer Park Water Co., located in Bronx, N.Y. During the taxable year 1970, petitioner learned that Integrated Resources, Inc. (hereinafter Integrated) was interested in acquiring insurance agencies. At the time, Integrated was a real estate developer interested in diversifying its holdings. In the latter part of 1970, petitioner advised Integrated that an insurance company named *141 Shadur, LaVine and Gallop, Inc. (hereinafter Shadur) was available for purchase. By virtue of this information, Integrated acquired the controlling stock in Shadur in late 1970. In recognition of the services provided by petitioner as a "finder," Integrated, on February 9, 1971, transferred 1,000 shares of its common stock to petitioner pursuant to a "private placement" under section 4(2) of the Securities Act of 1933. At the time of the transfer of these shares to petitioner, Integrated had 3,364,463 shares outstanding. Petitioner acquired an additional 500 shares of Integrated common stock on October 1, 1971, pursuant to a 3-for-2 stock split. On November 21, 1970, prior to the completion of the initial stock transfer, petitioner provided Integrated with an "investment letter" in which he represented to Integrated that the 1,000 shares of stock were being acquired for investment purposes and that he had no present intention to sell these shares. It was further understood by the parties that each share of stock would carry a legend to the effect that the shares involved had not been registered under the Securities Act of 1933 and that a public transfer of said shares free *142 and clear of restrictions would not be made without a registration or opinion from counsel satisfactory to Integranted that a registration was not required. To this extent, petitioner could have transferred the shares "publicly" in any manner permitted under the Securities Act of 1933. In 1971, petitioner could also have transferred the shares privately pursuant to the Act. The transferee would then have had to execute an "investment letter" similar to the one executed by petitioner. Due to the restrictions placed upon the stock, any private sale would have been at a substantial discount from the market price of freely traded shares. The fair market value of freely traded shares of Integrated on the "over-the-counter" market on February 9, 197u, was $34.70 per share. In February of 1973, petitioner decided to sell the stock pursuant to Rule 144 of the Securities Act of 1933. 17 C.F.R. sec. 230.144 (1978). Rule 1448 which became effective on April 15, 1972, was designed to allow the public sale of "restricted stock" without the need of a registration statement. Beginning on February 6, 1973, petitioner sought to secure the necessary opinions *143 from the Securities and Exchange Commission (SEC), the attorney for Integrated, and the underwriter, Todd and Company, Inc., of Carlstadt, N.J., to the effect that the sale could be made pursuant to Rule 144. On February 6, 1973, the fair market value of freely traded shares in Integrated was $14.65 per share. Final clearance from all parties and from the SEC for the sale of the stock was received on July 24, 1973. The fair market value of freely traded shares of Integrated on that date was $7.50 per share. Petitioner did not sell the stock in 1973 but waited until April 19, 1976, when he sold all 1,500 shares for $3 per share. Petitioner contends that section 83 does not apply to a finder's fee situation, so that he should have recognized income in July 1973 when a public sale could have been made pursuant to Rule 144 rather than in 1971 when he received the stock. Respondent disagrees, arguing that section 83 clearly applies to this situation and that petitioner must recognize income in taxable year 1971 equal to the market value of unrestricted Integrated stock at the time of transfer. We agree with respondent. Petitioner relies on the legislative history surrounding the *144 statute to support his position that section 83 was not intended to apply to his "once in a lifetime" opportunity. Prior to 1969, when an individual made a bargain purchase of stock subject to restrictions having a significant effect on value, that person would be taxed only when the restrictions lapsed or the property was sold in an arm's-length transaction. The amount taxable as ordinary income was the lessor of the fair market value of the stock at the time of its acquisition, determined without regard to the restrictions, or at the time the restrictions lapsed, over the individual's cost of the stock. Sections 1.61-2(d)(5) and 1.421-6(d)(2), Income Tax Regs. Petitioner's position is that these rules apply, rather than section 83, because that section was enacted to prevent the abuses of restricted stock plans in the employer-employee (in particular, executive employee) and underwriting contexts. We reject petitioner's argument. While restricted stock plans involving employers and employees may have been the primary impetus behind the enactment of section 83, the language of the section *145 covers the transfer of any property "to any person other than the person for whom such services are performed" in connection with the performance of services. (Emphasis added.) The legislative history makes clear that Congress was aware that the statute's coverage extended beyond restricted stock plans for employees. H. Rept. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 255; S. Rept. 91-552 (1969), 1969-3 C.B. 423, 501. The regulations state that section 83 applies to employees and independent contractors ( section 1.83-1(a), Income Tax Regs.) and that a transfer to an employee or independent contractor in recognition of services rendered is considered to be a transfer in connection with services ( section 1.83-3(f), Income Tax Regs.). There is no question but that, under the foregoing circumstances, these regulations are "not unreasonable and plainly inconsistent with the statute." Consequently, they are sustained. Fulman v. United States,434 U.S. 528, 533 (1978). Clearly, petitioner performed services as an independent contractor within the meaning of section 83. Thus, the stock given *146 to him in recognition of his having advised Integrated of Shadur's availability for acquisition falls with the ambit of that section. The remaining issue is to determine the value of the stock and year in which it is to be included in taxable income. Petitioner claims that the stock is to be included at its value on July 24, 1973 -- the date on which final clearance for its sale was received from all parties and the SEC. Assuming arguendo that this was the proper time under pre-1969 law, this is not the case under Section 83. Section 83(a) requires petitioner to include the fair market value of the stock at the first time his rights are either transferable or not subject to a substantial risk of forfeiture, whichever occurs earlier. Section 83(c)(1) states that "the rights of a person in property are subject to substantial risk of forfeiture if such person's rights to full enjoyment of such property are conditioned upon the future performance of substantial services by any individual." Petitioner's rights in the stock were not conditioned upon his future performance of, or refraining *147 from the performance of, any services, so that no substantial risk of forfeiture existed on February 9, 1971. Thus, the value of the stock is includable in petitioner's 1971 taxable year. The fair market value is to be determined, under section 83(a), "without regard to any restriction other than a restriction which by its terms will never lapse." Limitations imposed by registration requirements of Federal security laws are not restrictions which never lapse. Section 1.83-3(h), Income Tax Regs. This includes, not only S.E.C. Rule 144, but the investment letter as well. Section 1.83-5(c), Example (3), Income Tax Regs. [2]Pledger v. Commissioner,71 T.C. 618, 628-629 (1979). Cf. Kolom v. Commissioner,71 T.C. 235 (1978), on appeal (9th Cir., Jan. 26, 1979). Therefore, the value of the stock which is to be included in petitioner's income for taxable year 1971 is the fair market value of 1,000 freely traded shares of Integrated on February 9, 1971, i.e., $34,700. *148 We are not unaware of the hardship our holding may place on petitioner; the proceeds of his sale of Integrated stock are insufficient to cover his tax liability for the receipt of the same shares. However, we cannot ignore the unambiguous language of the statute. As we stated in Sakol v. Commissioner,67 T.C. 986, 996 (1977), affd. 574 F.2d 694 (2d Cir. 1978), "[while] some unfairness and inequity may result from the operation of section 83, Congress could rationally have concluded that such a result was justified by the ease and certainty of the section's operation. Weinberger v. Salfi, 422 U.S. at 777." See also Hofert, "Tax Traps in Receiving Stock for Services," 53 Texes 27, 29 (1975). Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the taxable year at issue, unless otherwise stated.↩
2. The Treasury Department's proposal for section 83 would have taken into account "restrictions imposed by federal securities law or imposed to comply with federal securities law," as well as "restrictions which by their very terms will never lapse." Hearings before the House Committee on Ways and Means on the Subject of Tax Reform, 91st Cong., 1st Sess. 5206 (1969) (Technical Explanation of Treasury Tax Reform Proposals, Apr. 22, 1969). The bill reported out of the House Ways and Means Committee did not include the reference to Federal securities laws (see sec. 321, H.R. 13270, 91st Cong., 1st Sess., 115 Cong. Rec. 21781, 21801 (1969) H. Rept. 91-413 (1969), 1969-3 C.B. 200↩, 254-256) and no such provision was later added.