**Clyde BROWN, Jr., Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Civ. A. No. C82–0075–O(J).**

United States District Court,
W.D. Kentucky,
Owensboro Division.

Oct. 18, 1984.

Jesse T. Mountjoy of Holbrook, Gary, Wible & Sullivan, Owensboro, Ky., for plaintiff.

David T. Gray, Asst. U.S. Atty. for the Western District of Ky., Louisville, Ky., and Michael J. Salem of the U.S. Dept. of Justice, Tax Division, Washington, D.C., for defendant.

MEMORANDUM OPINION

JOHNSTONE, District Judge.

The Internal Revenue Service audited Plaintiff Clyde Brown and assessed an in-

come tax deficiency of $57,397.86 on his 1976 tax return. Brown paid the deficiency and filed for a refund of $26,624.31 which was disallowed by the Commissioner of Internal Revenue (Commissioner). He then filed this suit against the United States under 28 U.S.C. § 1346(a)(1) for recovery of Internal Revenue taxes and interest erroneously and illegally assessed against him. Both parties have filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. These motions are now before the court.

Jurisdiction over this case exists under 28 U.S.C. § 1346(a).

Rule 56 provides that summary judgments shall be rendered if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. After a thorough review of the record, the court has determined that there is no material factual issue in dispute. There remains only a question of tax law to be determined by the court. For the reasons set forth below, the court finds that the law is in favor of the defendant United States. Therefore, plaintiff's motion for summary judgment is DENIED, and defendant's motion for summary judgment is SUSTAINED.

Clyde Brown is a coal miner and entrepreneur. During the years 1970 through 1976, Brown entered into six different coal mining leases. In each case, Brown acquired the mineral rights to particular tracts of land in exchange for a certain sum of money per month in advance minimum coal royalties. These royalties were to be credited against future earned royalties. After 1976 and before Brown had mined any of these tracts of land, he assigned or subleased each of the six coal mining leases.

This tax dispute arises out of Brown's treatment of the minimum advance royalty payments he made to his lessors in 1976. He treated them as ordinary losses and deducted them from his ordinary income under I.R.C. § 162(a)(3). That section permits taxpayers to deduct rental and other payments required to be made as a condition to the continued use and possession of property used in trade or business.

The Commissioner claims that the nature of Brown's payments is governed by I.R.C. §§ 631, 272, and 1231. Under these provisions, the royalties are not ordinary losses. Instead, they are expenses which must be taken into account in computing Brown's capital gain or ordinary loss. The court agrees with the Commissioner.

The Code sections involved here are somewhat complicated. Generally, royalties are taxed as ordinary income rather than capital gain. However, I.R.C. § 631(c) transforms some royalties into capital gain. Section 631(c) applies to lessors of mining rights who receive royalties based upon the value of minerals mined. This includes lessors who receive a minimum royalty despite the actual value of the coal mined. The Code deems that these lessors retain an economic interest in the minerals. Once the lessor has held that interest for more than one year, any disposition of the interest is a sale or exchange under the auspices of section 1231. The net "amount realized ... shall be considered as though it were a gain or loss, as the case may be, on the sale of such coal ...." I.R.C. § 631(c). I.R.C. § 1231 is the Code's capital gains provision.

If § 631 applies to a particular transaction then I.R.C. § 272 comes into play. It provides that if the disposal of coal is covered by § 631, overhead and administrative costs may be factored into the capital gains and ordinary loss equation but are otherwise not deductible. Thus, § 272 treats administrative costs as part of the cost of disposing of the coal, and prohibits their deduction as ordinary losses.

Although owners and lessors of mineral rights are controlled by the taxing provisions in § 631 and § 272, lessees of such rights are governed by the general taxing provisions. Simply put, lessees must report their gains as ordinary income and their losses as ordinary losses.

The dispute in this case arises out of the fact that in 1976, Brown was a lessee under

the leases in issue here. However, subsequent to 1976, he became a sublessor. As such, the Commissioner argues, Brown must follow the dictates of I.R.C. §§ 631, 272, and 1231.

Internal Revenue Regulation section 1.631–3(b)(3)(ii)(a) provides:

> However, a lessee who is also a sublessor may dispose of coal or iron ore as an 'owner' under section 631(c). Rents and royalties paid with respect to coal or iron ore disposed of by such a lessee under section 631(c) shall increase the adjusted depletion basis of the coal or iron ore and are not otherwise deductable.

The regulations continue by giving an example of such a lessee/sublessor arrangement:

> *Example.* B is a sublessor of a coal lease; A is the lessor; and C is the sublessee. B pays A a royalty of 50 cents per ton. C pays B a royalty of 60 cents per ton. The amount realized by B under section 631(c) is 60 cents per ton and will be reduced by the adjusted depletion basis of 50 cents per ton, leaving a gain of 10 cents per ton taxable under section 631(c).

Thus, under the regulations, Brown as a sublessor may not deduct from ordinary income the minimum advance royalties he has paid as a lessee.

Brown claims that in 1976 he was solely a lessee. Thus, the royalties he received as a lessee in that year should not be affected by section 631. The tax court has addressed this argument in *Davis v. Commissioner of Internal Revenue,* 74 T.C. 881 (1980). In that case the court faced a set of facts somewhat similar to these. The taxpayers were the partners in a joint venture designed to enter coal mining leases, and then to sublease or assign them. Each of the leases required taxpayers to pay minimum advance royalties until there were earned royalties. The advance royalties would later be credited against the earned royalties. When taxpayers filed their tax returns they deducted the royalties they paid as ordinary losses, and the profits they received as capital gains. Af-

ter an exhaustive examination of the statutes and regulations, the *Davis* court held "that none of the advanced or earned royalties paid by Cumberland (taxpayer) may be deducted from petitioners' ordinary income. All royalties paid must be taken into account in computing net royalty income or loss under section 631(c)." *Id.* at 899. This holding encompassed royalties paid on leases prior to their sublease. The court reasoned that the taxpayer had operated from the beginning as a sublessor, and the regulations specifically excluded sublessors from lessee treatment. Also, the tax court noted that "regardless of the actual time interval, in each instance, lease and subsequent sublease may be viewed as one transaction." *Id.* Thus, royalties paid by a sublessor cannot be deducted from ordinary income even though the sublease arose in years after those royalties were paid.

Brown correctly asserts that this case can be distinguished from *Davis.* In *Davis* the taxpayers were in the business of leasing and subleasing mineral rights. They did not mine coal themselves. All of the mineral rights that they leased were subleased; thus, the court determined that the taxpayers at all times operated as sublessors. On the other hand, Brown has engaged in coal mining operations and claims that he intended to mine the coal held under some leases at issue in this case.

Nevertheless, neither party has cited, nor can the court find authority other than *Davis* on this issue. Text writers agree that *Davis* established the rule that royalties paid by a sublessor are not deductible as ordinary losses. This includes advance royalties paid before subleasing or before commencement of mining operations. *Fed. Tax Coordinator 2d,* § N–7008; 1984 *P.H. Fed. Tax,* § 22,765 at 22,436; 6 *Fed. Tax Reporter* (CCH) § 42,571 (1984).

Thus, the court will follow the only cited authority and find that under the Code and the regulations a lessee who becomes a sublessor cannot deduct advance minimum royalties that he has paid as ordinary losses. Rather, he falls into the purview of

§ 631 and must take into account all advance royalties paid in computing net royalty income.

Therefore, the Commissioner did not erroneously or illegally assess Brown a tax deficiency for 1976.

Brown also asserts that the regulation 1.631–3 is invalid. The court notes that regulations shall be held valid unless they are irrational and plainly inconsistent with the statute. *Fulman v. United States*, 434 U.S. 528, 98 S.Ct. 841, 55 L.Ed.2d 1 (1978). We find that this regulation is reasonable and consistant, and decline to hold it invalid.

Since the court has ruled that Brown was not entitled to treat these royalties as ordinary losses, it need not address the separate issue of Brown's option to sublease the Old Ben mining lease.