Frank Davis, Andrews & Kurth, Houston, Tex., for plaintiff.

Louis P. Hytken, U.S. Dept. of Justice, Tax Div., Dallas, Tex., for defendant.

**KING RANCH, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. H–88–1552, H–89–59 and H–89–3772.**

United States District Court, S.D. Texas, Houston Division.

Aug. 29, 1990.

## AMENDED MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

This order is entered in response to motions to alter or amend partial summary judgment. Plaintiff, King Ranch, Incorporated ("KRI") and Defendant, the United States of America ("United States") agree on the basic facts in this case.

*Fact Summary*

KRI is the owner in fee of certain lands in south Texas. Three separate cases have been consolidated so that this action now covers tax years 1975 through 1985. During that time, the KRI properties were subject to oil and gas leases to Exxon. Exxon paid KRI a "market value" royalty on gas produced and sold from the leased properties under long term contracts which were in effect on February 1, 1975. These facts are not contested.

KRI initiated this action seeking a refund of taxes and interest assessed against it by the United States for royalty payments it received on its Exxon leases.

*Issue*

The issue before this Court is whether the royalty payments made to KRI fall under I.R.C. § 613A(b). This is the fixed contract exemption, one of the two major exemptions to the depletion allowance repeal set out in § 613. If KRI's

royalty receipts fall within the fixed contract exemption, it is entitled to the depletion allowance and it would be due a refund.

To come under this exemption a fixed contract had to be in effect on February 1, 1975. This ruling is necessarily limited in scope in that no new contracts will fall under the exemption. Thus this exemption is essentially a "dead letter." R. Westin, Taxation of Natural Resources: Oil, Gas, Minerals and Timber, 130 (1987).

Both sides have submitted well written briefs in support of their respective legal interpretation of the statute. Both interpretations can be arrived at from the wording of the statute. Therefore, this Court must find the "interpretation which can most fairly be said to be embedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957). To this end, this Court has reviewed the Congressional Record covering the debate on the passage of the "Tax Reduction Act of 1975" of which § 613A is a part. This Court has also reviewed the statute and the analysis of the legislation made by the United States Supreme Court in *Commissioner of Internal Revenue v. Engle*, 464 U.S. 206, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984).

■ It is the analysis of this Court that the intent of Congress was to leave an exemption for natural gas under a fixed contract only to those taxpayers who could not adjust their gas price to cover their increased liabilities due to the repeal of the percentage depletion allowance. The "market value" royalty provisions in the KRI leases with Exxon allow KRI to adjust its price received for gas to account for its increased liabilities. KRI is not the kind of taxpayer for whom the exemption was meant to give relief, therefore KRI's leases do not fall under the fixed contract exemption of I.R.C. § 613A(b).

*Legislative History*

Congress passed Pub.L. No. 94–12 in 1975. Section 501(a) of P.L. 94–12 contained a new Code Section 613A, I.R.C. § 613A, entitled "Limitation on percentage depletion in case of oil and gas wells." I.R.C. § 613 had effectively repealed the percentage depletion allowance available for oil and gas wells under I.R.C. § 611. Section 613A contained exemptions which reestablished the percentage depletion allowance for a limited number of taxpayers.

The two exemptions contained in § 613A are: (b) Exemptions for certain domestic gas wells and (c) Exemptions for independent producers and royalty owners. The domestic gas well exemption is restricted to gas sold from gas wells which is either regulated natural gas or natural gas sold under a fixed contract as each is defined in I.R.C. § 613A(b)(3)(A) and (B).

KRI states in its Brief in Support of Plaintiff's Motion for Partial Summary Judgment that the royalty income attributable to production is in excess of the exemption allowed under § 613A(c), the exemption for independent producers and royalty owners. Therefore, KRI must rely on the other major exemption class under § 613A which is the fixed contract exemption under § 613A(b). The issue of whether KRI comes under § 613A(c), the royalty owner exemption, is not before this Court.

*Opinion*

KRI argues that the language of Section 613A unambiguously supports the conclusion that Exxon's customer contracts control the determination of KRI's entitlement to percentage depletion. The pertinent part of the statute reads as follows:

§ 613A(b)

(3) Definitions. For purposes of this subsection—

(A) Natural gas sold under a fixed contract. The term "natural gas sold under a fixed contract" means domestic natural gas sold by the producer under a contract, in effect on February 1, 1975, and at all times thereafter before such sale, under which the price for such gas cannot be adjusted to any extent to reflect the increase in liabilities

of the seller for tax under this chapter by reason of the repeal of percentage depletion for gas. Price increases after February 1, 1975, shall be presumed to take increases in tax liabilities into account unless the taxpayer demonstrates to the contrary by clear and convincing evidence.

KRI's position is that since Exxon's contract price is fixed, KRI as the royalty owner is entitled to the exemption. This Court does not believe that the language of the statute or the legislative intent supports that interpretation.

"[S]ince only one percentage depletion allowance is statutorily authorized for each dollar of oil and gas income, lessees have always been required to reduce their allowances by any bonuses or advance royalties paid to lessors." *Engle*, 464 U.S. at 211, 104 S.Ct. at 601. This same logic applies to regular royalties.

I.R.C. § 613(a) makes it clear that the allowance for percentage depletion applies to the gross income from a property after taking out any royalties or rents. I.R.C. § 613(a). Thus when the fixed contract exemption under § 613A(b) addresses "natural gas sold by the producer" this exemption is only addressing the gas sold under a fixed contract by the producer, Exxon. Exxon's gas sales contract for the sale of gas to Exxon's customers controls to determine the percentage depletion allowance as it would apply to Exxon. KRI is not entitled to this exemption.

KRI is entitled to its own exemption on its gross receipts. That exemption is covered in § 613A(c) which is aptly titled "Exemption for independent producers and royalty owners." Producers with fixed contracts fall under § 613A(b) while royalty owners come under § 613A(c).

Even assuming that this "clearly unambiguous" reading of the statute is incorrect, KRI takes liberties with its interpretation. KRI's interpretation disregards the qualifying phrase "under which the price for such gas cannot be adjusted to reflect to any extent the increase in liability of the seller ... by reason of repeal of percentage depletion of gas." KRI can adjust the price it receives to the extent the market price increases to cover its increased liabilities. The fact that Exxon receives a fixed price does not imply that all prices under the contract are fixed or that all recipients of a price from the sale of the gas cannot adjust their price to cover their increased liabilities.

KRI cites *Shamrock Oil & Gas Corp. v. Commissioner*, 35 T.C. 979 (1961) to support its argument that the producer is the only seller of production from a gas well. The cited case is distinguishable in that the producer is the only seller from a well for the purposes of calculating weighted average market price in a production area. The price paid to a royalty owner on a well can not be considered a separate sale from the producers sale to raise the average market value in a production area when a higher royalty price is paid on a "market value" clause stipulated in the lease agreement. Id. at 985. This does not mean that KRI is not a seller within the context of § 613A.

In *J.M. Huber Corp. v. Denman*, 367 F.2d 104 (5th Cir.1966), the plaintiffs argued that there was no sale by the royalty owners since they retained no gas to sell. It is true that royalty owners do not retain title to the gas. But "virtually every Supreme Court case touching on the issue has eschewed title as a deciding factor.... The several rights which make up title vary from state to state, and are not always relevant to tax litigation." *United States v. Cocke*, 399 F.2d 433, 445 (5th Cir.1968). Thus the issue of title to the gas is not determinative of tax liability pursuant to a sale.

The United States Supreme Court made this clear in stating that "neither the form of the transaction nor the peculiarities of state law are controlling in determining whether there is a jurisdictional sale of gas under the Act." *J.M. Huber Corp. v. Denman*, 367 F.2d 104, 114 (5th Cir.1966). While this was in reference to the Natural Gas Act, the concept was reiterated by the Fifth Circuit in stating that "[s]tate law is relevant to the determination of the existence of legal and equitable interests, but federal law governs 'when and how [these

interests] shall be taxed.'" *Estate of Johnston By Payne v. United States*, 779 F.2d 1123, 1125 (5th Cir.1986) (quoting *Burnet v. Harmel*, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199 (1932)).

The final sentence of 613A(b)(2), the definition of natural gas sold under a fixed contract is pertinent. That sentence states that "[p]rice increases after February 1, 1975, shall be presumed to take increases in tax liabilities into account unless the taxpayer demonstrates to the contrary by clear and convincing evidence," I.R.C. § 613A. KRI, the taxpayer in this case, has not rebutted the presumption by clear and convincing evidence that the increase in price that it received took into account its increased tax liability.

There is further evidence that Congress did not intend KRI as a royalty interest owner with a market value clause to fall under this exemption. The exemptions which form the heart of § 613A(b) were offered by Congressman Green during house floor debate on February 27, 1975. During that debate Congressman Green ("Green") stated that his exemption covers those in a "fixed-price contract, many of them written a long time ago, when the price structure was different. But if the contracts are renegotiated they lose [the exemption]." 121 Cong.Rec. 4643–4644. Earlier Green stated his amendment "would relieve those who would be potentially hurt, ... [t]he gas producers under fixed contracts" Id. at 4642. Plaintiff, as recipient of "market value" royalties is not within the class of taxpayers considered to fall under this exemption to the repeal of the percentage allowance depletion.

This is evident when considering that the price KRI received can be adjusted to reflect the increased liabilities resulting from by reason of the repeal of the percentage depletion. Any price increase after February 1, 1975 is presumed by the statute to take into account any increase in tax liabilities for the taxpayer.

KRI makes the distinction that the exemption for fixed contract gas is for an identifiable category of production while the exemption under § 613A(c), indepen-

dent producers and royalty owners, was based on the type of recipient. This distinction is not made in the congressional floor debate. The floor debate speaks of the types of producers who will be hurt under the percentage allowance repeal and does not make the production type versus recipient distinction. 21 Cong.Rec. 4642. Thus all income produced under a fixed contract is not automatically exempted because of the production class associated with that income.

In *Engle*, the Supreme Court interpreted § 613A as retaining the percentage depletion allowance for all qualified income as it related to independent producers and royalty owners. This comported with the congressional intent to increase production by these two groups. *Engle*, 464 U.S. at 218, 104 S.Ct. at 605. The Court was not interpreting the statute as it related to the fixed contract exemptions, only to Congress' intent to support these small producers. All income that falls outside the exemption such as the "market value" royalty payments made to Plaintiff, no longer retains the percentage depletion allowance.

The United States Supreme Court in *Fulman v. United States*, 434 U.S. 528, 98 S.Ct. 841, 55 L.Ed.2d 1 (1978), "upheld a regulation which had a 'reasonable basis' in statutory history even though the taxpayer's challenge to its policy had 'logical force.' The choice among reasonable interpretations is for the Commissioner, not the courts." *National Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 488, 99 S.Ct. 1304, 1312, 59 L.Ed.2d 519 (1979) (quoting *Fulman*, 434 U.S. at 534, 98 S.Ct. at 845). This Court finds that the Commissioner's interpretation of the statute and the Congressional intent is not unreasonable and therefore must be upheld. *United States v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967).

*Conclusion*

For the aforementioned reasons it is hereby ORDERED that Defendant's cross motion for partial summary judgment (Doc. # 33) is GRANTED against Plaintiff King Ranch, Inc. It is further

ORDERED that Plaintiff's motion for partial summary judgment (Doc. # 31) is DENIED. It is further

ORDERED that the motion to reconsider (Doc. # 52) is DENIED.