Clyde BROWN, Jr., Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 84–6008.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1985.

Decided Jan. 23, 1986.

Jesse T. Mountjoy (argued), Holbrook, Gary, Wible, Sullivan, T. Richard Riney, Owensboro, Ky., for plaintiff-appellant.

Ronald E. Meredith, U.S. Atty., David T. Gray, Louisville, Ky., Michael J. Salem, Trial Atty., Tax Div., U.S. Dept. of Justice, Glenn L. Archer, Jr., Michael L. Paup, Gilbert S. Rothenberg, Francis M. Allegran (argued), for defendant-appellee.

Before: JONES and CONTIE, Circuit Judges; and DEMASCIO, District Judge.*

CONTIE, Circuit Judge.

Clyde Brown Jr. appeals from the district court order granting summary judgment in favor of the United States in this action pursuant to 28 U.S.C. § 1346(a)(1) to recover erroneously assessed income taxes, 600 F.Supp. 47. For the reasons below, we remand this case to the district court.

## I.

This case involves a dispute concerning the tax treatment of coal royalties paid by Brown to property owners for the right to extract coal from leased property. During the years 1970 through 1977, Brown executed various coal mining leases under which he was lessee either in his individual capacity or in cooperation with his corporation, Brown Badgett, Inc. The terms of the leases required Brown each year to pay the lessors a royalty for each ton of coal mined or, if no coal was mined, an advanced minimum royalty. Brown did not mine coal under any of the leases during the 1976 tax year. Accordingly, he paid advanced minimum royalties to each of the lessors. Brown deducted those payments from ordinary income on his 1976 tax return, claiming that they represented ordinary and necessary business expenses under § 162(a)(3) of the Internal Revenue Code (Code), 26 U.S.C. § 162(a)(3).

Subsequently, without having mined any of the leased properties, Brown subleased or assigned each of the leases. Most of these transactions occurred in 1977. Under the subleases, Brown was entitled as a sublessor to receive royalty payments from the sublessees. Brown also remained obligated to continue to make royalty payments pursuant to the original leases.

On audit, the Internal Revenue Service (Service) disallowed the deductions taken in 1976 for the advanced royalty payments, pursuant to 26 U.S.C. § 631(c).[1] The Ser-

---

* The Honorable Robert E. DeMascio, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Section 631(c) provides in pertinent part:

    **Gain or loss in the case of timber, coal, or domestic iron ore**

    (c) **Disposal of coal or domestic iron ore with a retained economic interest.**—In the case of the disposal of coal (including lignite), or iron ore mined in the United States, held for more than six months before such disposal, by the owner thereof under any form of contract by virtue of which such owner retains an economic interest in such coal or iron ore, the difference between the amount realized from the disposal of such coal or iron ore and the adjusted depletion basis thereof plus the deductions disallowed for the taxable year under section 272 shall be considered as though it were a gain or loss, as the case may be, on the sale of such coal or iron ore. Such owner shall not be entitled to the allowance for percentage depletion provided in section 613 with respect to such coal or iron ore. This subsection shall not apply to income realized by any owner as a coadventurer, partner, or principal in the mining of such coal or iron ore, and *the word "owner" means any person who owns an economic interest in coal or iron ore in place, including a sublessor.* The date of disposal of such coal or iron ore shall be deemed to be the date such coal or iron ore is mined. *In determining the gross income, the adjusted gross income, or the taxable income of the lessee, the deductions allowable with respect to rents and royalties shall be determined without regard to the provisions of this subsection. * * * (Emphasis added).*

    Section 272 provides in pertinent part:

    **Disposal of coal or domestic iron ore**

    Where the disposal of coal or iron ore is covered by section 631, no deductions shall be

vice determined that the royalty payments had to be offset against the royalty income Brown received as sublessor to compute net royalty income which is reported as capital gain. This treatment is consistent with Treas. Reg. § 1.631–3(b)(3)(ii)(a).[2] As a result of the adjustment, the Commissioner of Internal Revenue assessed a deficiency.

In December, 1981, Brown paid the assessed deficiency. He then filed a timely claim for a refund, claiming that § 631 of the Code did not preclude his treatment of the advanced royalty payments. When the Commissioner denied the refund claim, Brown initiated the present action to recover the assessed income taxes. Both Brown and the United States filed motions for summary judgment in the action. The district court found that the Commissioner correctly disallowed the deductions, relying on a Tax Court decision, *Davis v. Commissioner*, 74 T.C. 881 (1980), and Treas. Reg. § 1.631–3(b)(3)(ii)(a). The court stated that "under the Code and the regulations a lessee who becomes a sublessor cannot deduct advance minimum royalties that he has paid as ordinary losses. Rather, he falls

into the purview of § 631 and must take into account all advance royalties paid in computing net royalty income." Accordingly, on October 22, 1984, the district court granted the United States' motion for summary judgment. Brown appeals from that judgment.

## II.

The sole issue on appeal is whether the district court correctly determined that the coal royalties paid by Brown as lessee were not deductible as ordinary business expenses but instead had to be offset against the royalty income he received as a sublessor to determine capital gain or ordinary loss pursuant to 26 U.S.C. §§ 631(c), 272 and 1231. As noted above, the district court relied on the *Davis* decision of the Tax Court. While the present appeal from the district court's judgment was pending, this court affirmed the Tax Court's decision in *Davis. See, Davis v. Commissioner*, 746 F.2d 357 (6th Cir.1984). This court's intervening decision significantly affects the present appeal in that it disposes of several of Brown's arguments and raises a

---

allowed for expenditures attributable to the making and administering of the contract under which such disposition occurs and to the preservation of the economic interest retained under such contract, except that if any taxable year such expenditures plus the adjusted depletion basis of the coal or iron ore disposed of in such taxable year exceed the amount realized under such contract, such excess, to the extent not availed of as a reduction of gain under section 1231, shall be a loss deductible under section 165(a). * * *

Section 1231 provides in pertinent part:

**Property used in the trade or business and involuntary conversions**

(a) **General Rule.**—If, during the taxable year, the recognized gains on sales or exchanges of property used in the trade or business ... exceed the recognized losses from such sales, exchanges and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than one year. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets.

(b) **Definition of property used in the trade or business.**

\* \* \* \* \* \*

(2) **Timber, coal or domestic iron ore.**— Such term includes timber, coal, and iron ore with respect to which section 631 applies. Thus, when read together, these sections dictate that the costs incurred by an owner of coal rights which relate to disposal of coal must be offset against coal royalty income, and any net royalty income is treated as capital gain while a net royalty loss receives ordinary loss treatment.

2. Treas. Reg. § 1.631–3(b)(3)(ii)(a) provides:

[A] lessee who is also a sublessor may dispose of coal or iron ore as an "owner" under section 631(c). Rents and royalties paid with respect to coal or iron ore disposed of by such a lessee under section 631(c) shall increase the adjusted depletion basis of the coal or iron ore and are not otherwise deductible.

The regulation continues by giving an example of such a lessee/sublessor arrangement:

*Example.* B is a sublessor of a coal lease; A is the lessor; and C is the sublessee. B pays A a royalty of 50 cents per ton. C pays B a royalty of 60 cents per ton. The amount realized by B under section 631(c) is 60 cents per ton and will be reduced by the adjusted depletion basis of 50 cents per ton leaving a gain of 10 cents per ton taxable under section 631(c).

consideration which the district court did not address. It is because of this additional consideration that we find it necessary to remand the case for further proceedings.

### A.

*Davis* presented a situation factually similar to the present appeal and involved the same statutory scheme. The taxpayers in *Davis* were partners in a joint venture engaged in the leasing of coal mining rights. The joint venture leased rights from various land owners and then subleased the same rights to its wholly owned corporation which performed the actual mining. The taxpayers in *Davis* treated all the royalties paid by the joint venture as business expenses deductible from ordinary income under § 162(a) of the Code. There were three different categories of royalty payments involved: (1) earned royalty payments made on coal which the sublessee actually mined, (2) advanced minimum royalty payments made after the coal rights had been subleased, and (3) advanced minimum royalty payments made before the coal rights had been subleased. With regard to the royalty income received in its capacity as sublessor, the joint venture treated all the royalties as capital gains pursuant to § 631(c) of the Code. The Commissioner rejected the taxpayers' treatment of the royalty payments as business expenses. The Commissioner determined, based on Treas. Reg. § 1.631–3(b)(3)(ii)(a), that the total royalties paid as lessee, both earned and advanced, had to be subtracted from royalties received as sublessor to compute net capital gain.

A divided Tax Court held that royalties paid by a sublessor of coal mining rights in the sublessor's capacity as lessee are not deductible from ordinary income. *Davis,* 74 T.C. at 896. The Tax Court also rejected the argument that the language in § 631(c), providing that a lessee's deductions are not affected by that provision, was intended to exempt a lessee who is also a sublessor. The court stated:

[I]t is reasonably clear that the sentence excluding "the lessee" was added when the statute was enacted only to ensure that those not benefitting from section 631(c) would not be adversely affected either.

*Id.* at 897. The court also specifically found that the joint venturer could not deduct from ordinary income the advanced minimum royalties which were paid on leases *before* the subleases were executed. Despite the fact that the joint venturer was only a lessee at the time the payments were made, the court treated the payments as if they had been made by a lessee who was also a sublessor. *Id.* at 899.

In affirming the judgment of the Tax Court, this court agreed with the finding that the language in § 631(c) of the Code which excludes lessees from its coverage does not insulate a lessee who is also a sublessor. *Davis v. Commissioner,* 746 F.2d 357, 361 (6th Cir.1984). Also, the court expressly endorsed the validity of Treas. Reg. § 1.631–3(b)(3)(ii)(a), finding that "the requirement of [the regulation] that the sublessor increase the adjusted depletion basis of coal disposed of under section 631(c) by the royalties paid is reasonable and consistent with the statutory scheme." *Id.* Most importantly to this appeal, the court addressed the tax treatment of the advanced royalties paid by the joint venture before it became a sublessor. The court noted that the Tax Court had applied the "step transaction" doctrine in order to treat the joint venture's initial lease agreements and subsequent subleases as one transaction. The court further observed that the taxpayers did not dispute the Tax Court's findings that the joint venture had never engaged, and had never intended to engage, in mining operations. Therefore, the court affirmed the Tax Court's application of the step transaction doctrine, stating:

We agree with the Tax Court that because [the joint venture] never intended to be other than a sublessor, the advanced royalty payments made to [the venture] before it subleased the mining rights ... must also be included in the

adjusted depletion basis under section 631(c).

*Id.* at 363.[3] Lastly and significantly, the court observed " 'what we do not decide is as important as what we do decide.' " *Id.*, quoting *Commissioner of Internal Revenue v. Engle,* 464 U.S. 206, 104 S.Ct. 597, 609, 78 L.Ed.2d 420 (1984). The court specifically stated that the appeal was "not a case involving the payment of advanced royalties by a lessee who did not intend to but, subsequently in fact, did become a sublessor." *Davis,* 746 F.2d at 364.

### B.

We first observe that this court's intervening decision in *Davis* disposes of several of Brown's arguments in this case. First, Brown's challenge of the validity of Treas. Reg. § 1.631–3(b)(3)(ii)(a) is without merit since *Davis* upheld the regulation's validity, finding it to be "reasonable and consistent with the statutory scheme." *Davis,* 746 F.2d at 361. Also, Brown's argument that § 631(c) can never be applied to a taxpayer who is originally a mere lessee and only subsequently becomes a sublessor is incorrect. *Davis* rejected that view and approved the application of the step transaction doctrine in certain instances to treat the acquisition of leases and subsequent execution of subleases as one transaction. *Id.* at 363.

Even though we summarily dismiss the above arguments based on *Davis,* Brown raises an additional issue, crucial to the disposition of this case, which *Davis* does not preclude. That issue is whether Brown intended to mine the coal as a lessee under the original leases or whether he always intended to become a sublessor. As Brown correctly observes, the *Davis* opinion highlighted the importance of the intent question by stating that it was "not a case involving the payment of advanced royalties by a lessee who did not intend to but, subsequently in fact, did become a sublessor." *Id.* at 364. Brown asserts that the present appeal is precisely such a case, distinguishable from *Davis* and inappropriate for application of the step transaction doctrine. Brown contends that he, unlike the taxpayers in *Davis,* intended to mine the coal as a lessee. In support, Brown asserts that he has engaged in coal mining in the past, where in *Davis* the taxpayers had not, and that he never subleased all of his coal leases to one entity as the joint venture did in *Davis.*

This question of intent is important to application of the step transaction doctrine in this situation. The step transaction doctrine is a " 'judicial device expressing the familiar principle that in applying the income tax laws, the substance rather than the form of the transaction is controlling.' " *Redding v. Commissioner,* 630 F.2d 1169, 1175 (7th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 338 (1981), quoting, Comment, *Taxation of Stock Rights,* 51 Calif.L.Rev. 146, 157 (1963) (footnote omitted); *see also, Security Industrial Insurance Co. v. United States,* 702 F.2d 1234, 1244 (5th Cir.1983) ("The step transaction doctrine is a corollary of the general tax principle that the incidence of taxation depends upon the substance of a transaction rather than its form."). Under the doctrine, individual steps in a series of transactions are considered "together as component parts of an overall plan," and taxation turns on the transaction viewed as a whole rather than the individual steps. *Crenshaw v. United States,* 450 F.2d 472, 475–76 (5th Cir.1971).

Although "there is no universal test applicable to step transaction situations," *King Enterprises, Inc. v. United States,* 418 F.2d 511, 516 189 Ct.Cl. 466 (1969), the courts and commentators have articulated several tests to be used in determining when the doctrine applies. The standard most often applied is the "end

---

**3.** In so holding, the court rejected the argument that such royalties should be treated as ordinary and necessary business expenses absent a showing that the lessee was under a contractual obligation to execute the subleases. This variation of the step transaction doctrine, the "binding commitment" test, was deemed to be "particularly unresponsive" to the situation. *Davis,* 746 F.2d at 363.

result" test. *Security Industrial Insurance*, 702 F.2d at 1244. Under that test " 'purportedly separate transactions will be amalgamated into a single transaction when it appears that they were really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result.' " *King Enterprises*, 418 F.2d at 516, quoting, Herwitz, Business Planning, 804 (1966); *see also, Redding*, 630 F.2d at 1175. This test clearly makes intent a necessary element for application of the doctrine. A second standard is the "interdependence" test which "requires an inquiry as to 'whether on a reasonable interpretation of objective facts the steps are so interdependent that the legal relations created by one transaction would have been fruitless without a completion of the series.' " *King Enterprises*, 418 F.2d at 516, quoting, Paul & Zimet, *Step Transactions*, Selected Studies in Federal Taxation, 200, 254 (2d Ser. 1938); *see also, Redding*, 630 F.2d at 1177; *Security Industrial Insurance*, 702 F.2d at 1244. The third test, the "binding commitment" test, is the most restrictive. Under this test, "if one transaction is to be characterized as a 'second step' there must be a binding commitment to take the later steps." *Commissioner v. Gordon*, 391 U.S. 83, 96, 88 S.Ct. 1517, 1524, 20 L.Ed.2d 448 (1968). Utilization of this test generally has been limited, however. *See, Security Industrial Insurance*, 702 F.2d at 1245, and the cases and authorities cited therein.

Application of the step transaction doctrine is necessary to a holding that § 631(c) governs the tax treatment of the royalties paid by Brown as a lessee. If the step transaction doctrine applies, Brown will be considered a lessee who is also a sublessor and, pursuant to Treas. Reg. § 1.631–3(b)(3)(ii)(a), he will be subject to the terms of § 631(c) requiring the royalties paid to be offset against royalty income to compute capital gain. If the doctrine does not apply, the execution of the leases and subsequent execution of subleases should be viewed as separate transactions for the purposes of taxation. Under this view, Brown's original treatment of his royalty payments as deductible business expenses would be allowable, since § 631(c) by its own terms does not apply to a taxpayer who is solely a lessee.

■ We conclude that *Davis* adopted the "end result" test of the step transaction doctrine. *Davis* expressly rejected the "binding commitment" standard and, even though the court did not likewise expressly reject the "interdependence" test, it impliedly did so by focusing on the taxpayer's intent. As we previously observed, intent is a crucial element under the "end result" test. Therefore, application of the step transaction doctrine in this case turns on whether Brown intended to mine the coal or intended to execute subleases.

■ The question of Brown's intent is a question of fact to be determined by the district court. The district court made no finding regarding his intent, however, which is reasonable since the judgment of the court preceded this court's decision in *Davis*.[4] Because we are unable as a matter of law to find that Brown either intended to mine the coal or intended to sublet the leases,[5] we must remand the case for a determination of Brown's intent.[6]

Accordingly, this case is REMANDED for proceedings consistent with this opinion. The parties shall bear their own costs.

---

4. Brown incorrectly asserts that the district court found that he intended to mine the coal. The court merely stated that Brown "*claims* that he intended to mine the coal held under [the] leases." (Emphasis added).

5. In so holding, we reject the arguments asserted by both Brown and the government that the record is "clear" regarding Brown's intent.

6. We make no findings concerning the government's alternative argument that the case can be affirmed based on the "tax benefit" rule. We note, however, that this court established in *Davis* the analysis in which we will engage when presented with these tax questions and the preferred approach would be to remain consistent in our analysis.