**Clyde BROWN, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 82–0075–0(CS).**

United States District Court,
W.D. Kentucky,
at Owensboro.

Sept. 3, 1987.

Jesse T. Mountjoy, Holbrook, Gary, Wible & Sullivan, P.S.C., Owensboro, Ky., for plaintiff.

David T. Gray, Asst. U.S. Atty., Louisville, Ky., for defendant.

Michael J. Salem, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIMPSON, District Judge.

This matter is before the Court on remand from the United States Court of Appeals for the Sixth Circuit for the limited purpose of determining the plaintiff's intentions concerning certain of his coal leaseholds. See *Brown v. U.S.*, 782 F.2d 559 (6th Cir.1986).

### PROCEDURAL HISTORY

The case involves a dispute concerning the tax treatment of coal royalties Brown paid to property owners for various coal leaseholds. Brown deducted his payments of advanced minimum royalties [1] from ordinary income on his 1976 tax return, claiming that they represented ordinary and necessary business expenses under 26 U.S.C. § 162(a)(3). On audit, the Internal Revenue Service disallowed the deductions pursuant to 26 U.S.C. § 631(c). The Commissioner of Internal Revenue assessed a deficiency, Brown paid the amount, then instituted this action claiming entitlement to a refund.

The United States District Court, Edward H. Johnstone presiding, found that the coal royalties paid by Brown as lessee were not deductible as ordinary business expenses but instead had to be offset against the royalty income he received as a sublessor of the properties to determine capital gain or ordinary loss pursuant to 26 U.S.C. § 631(c), § 272 and § 1231. On ap-

---

1. Under the terms of these leases, Brown was required to pay the landowner a certain advanced minimum royalty in the event that no coal was mined on the property during a specified period.

peal, the Sixth Circuit approved the District Court's reliance on the case of *Davis v. Commissioner,* 746 F.2d 357 (6th Cir. 1984).[2]

The *Davis* case held that the lessee therein who never intended to be other than a sublessor of the coal mining rights would be required to include in its adjusted depletion basis (under § 631[c]) advanced royalty payments made before it subleased the mining rights. The "step transaction" doctrine was utilized to treat the initial agreements and subsequent subleases as one transaction in order that, in application of the income tax laws, the substance rather than the form of the transaction would control.

The Court of Appeals noted that the *Davis* Court adopted the "end result" test for determining when the "step transaction" doctrine applies, and held this to be the appropriate standard to be applied in the Sixth Circuit as well. Under the "end result" test:

> purportedly separate transactions will be amalgamated into a single transaction when it appears that they were really component parts of a single transaction intended from the outset to be taken for the purpose of reaching the ultimate result. (citations omitted).

See *Brown v. United States,* supra. at 564. The Sixth Circuit concluded that a determination as to Brown's intent was crucial to the application of the "end result" test. *Ibid.* It was noted that the District Court made no finding regarding Brown's intent and remanded the case to this Court for that specific finding.

In harmony with the opinion of the Court of Appeals, the parties stipulated that the issue on remand was whether Brown, at the time he made the royalty payments in question, intended to sublet various mineral leases.[3] A sub-issue, stipulated by the parties, arises out of the first—should it be

determined that Brown did not intend to sublet the mineral leases at the time royalty payments were made, does the Ten Thousand ($10,000.00) Dollar payment made to Old Ben Coal Company, pursuant to a contract dated June 18, 1976, constitute a "royalty payment" or a payment made for acquisition of an option.

The case was called for trial on June 19, 1987. The parties announced their presence and readiness for trial. The Court thereupon heard evidence and argument of counsel. The parties were then afforded thirty days in which to submit any additional authority or argument, whereupon the matter was taken under submission for rendition of factual findings and conclusions of law.

### FINDINGS OF FACT

The Court, having had opportunity to hear the testimony of witnesses and observe their demeanor in court, as well as to review the documentary evidence admitted and the record as a whole and to consider argument of counsel, finds the following facts:

### A.  GENERALLY

1.  The issues as set forth above have been stipulated by the parties.

2.  That the primary goal during all of the plaintiff's activities was to make a profit.

3.  That the plaintiff had been in the "coal business" since the 1950s.

4.  That the plaintiff was an experienced coal operator with great knowledge of the coal propensities of the counties located in western Kentucky.

5.  That the plaintiff had conducted coal extraction activities in his own name as a proprietor in the 1950s and as late as 1966, but not thereafter.

---

**2.**  While the appeal of the District Court decision in the case at bar was pending the *Davis* decision was affirmed by the Sixth Circuit.

**3.**  This articulation of the issue by the parties does no violence to the statement of the issue by the Sixth Circuit as "whether Brown intended to mine the coal as a lessee under the original

leases or whether he always intended to become a sublessor." The Court finds that the either/or construction by the Court of Appeals indicates the Court's directive to inquire whether or not the individual steps are, in reality, component parts of an overall plan.

6. That since 1976 the plaintiff had participated in business ventures encompassing the extraction of coal but has done so exclusively in the corporate format.

7. That the plaintiff owned no coal equipment in 1976.

8. That the plaintiff and any person could easily lease coal equipment and that the possession or ownership of coal equipment was not determinative of the ability or intention to actually extract the mineral.

9. That the plaintiff reported no income from extraction of coal on Schedule C of his personal federal income tax form, from the period 1969 through 1976.

10. That it was not common for coal operators in western Kentucky to extract coal in their personal capacity as proprietors.

11. That the plaintiff acquired coal leases in his own name in order to exercise control over the disposition of the lease and because the individuals from whom the leases were acquired were leery of dealing with a corporate entity. It was, therefore, easier for Brown to acquire the coal leases in his individual capacity.

12. That part of the plaintiff's business consisted of obtaining coal leases on properties and assembling them into larger tracts which would be more economical for mineral extraction.

13. That the plaintiff incurred expenses for exploration, testing, and drilling. However, the fact of such expenses is not determinative of the subleases' intent since those expenses would be incurred not only in evaluating whether or not the properties could be leased but also in determining whether or not the properties could be mined.

14. That the plaintiff did report personal losses during the period 1969 through 1976 on Schedule C for expenses in the nature of royalties, exploration and testing.

15. That the plaintiff testified that subsequent to 1966, the properties would be evaluated and mined by him in a corporate capacity.

### B. SPINKS LEASE

1. The plaintiff acquired an interest in certain property in Ohio County, Kentucky, from Mr. and Mrs. Spinks on September 7, 1973.

2. The plaintiff assigned or subleased his interest in the said property to James M. Amick as Trustee on October 17, 1977.

3. That the plaintiff spent approximately six months negotiating that transaction prior to October 17, 1977.

4. That the plaintiff kept the property a "couple" of years, in other words two or three, before reaching a decision to sublease the property.

5. That on and prior to January 1, 1976, and at the time the advanced royalty payments were made, the plaintiff intended to sublease the said property.

### C. THE CROSS LEASE

1. The plaintiff acquired an interest in certain property in Scott County, Tennessee, from Mr. and Mrs. Cross on June 10, 1970.

2. That the plaintiff reached a decision to sublease the property within four or five years after acquiring the aforesaid interest.

3. That the plaintiff assigned his interest in the said property to Bill Ray on August 19, 1977.

4. That on and prior to January 1, 1976, and at the time the advanced royalty payments were made, the plaintiff intended to sublease the said property.

### D. THE CASEBIER LEASE

1. That the plaintiff acquired an interest in certain property in Muhlenberg County, Kentucky, covered by the Casebier lease on July 30, 1976.

2. That the plaintiff assigned his interest in the said property to Brown Badgett, Inc. on June 21, 1977.

3. That the plaintiff could not remember his exact intentions with respect to the Casebier property or when he decided to assign the lease.

4. That on and prior to January 1, 1976, and at the time the advanced royalty payments were made, the plaintiff intended to sublease the said property.

## E. THE WICKLIFFE LEASE

1. That the plaintiff acquired an interest in certain property covered by the Wickliffe lease in Muhlenberg County, Kentucky, on October 26, 1976.

2. That the plaintiff assigned his interest in the said property to Brown Badgett, Inc. on March 8, 1977.

3. That on and prior to January 1, 1976, and at the time the advanced royalty payments were made, the plaintiff intended to sublease in the said property.

## F. THE ALABAMA LIGNITE LEASES

1. That the plaintiff acquired an interest in various properties covered by the Alabama Lignite leases beginning on November 4, 1970, and ending on July 12, 1975.

2. That the plaintiff assigned his interests in the aforesaid leases to Alabama Lignite Partnership on November 12, 1980.

3. That the plaintiff intended to personally develop these properties by trying to convince a utility to locate at or near the location of the lignite deposits inasmuch as the lignite, a poor quality coal with a high percentage of moisture, is generally not suitable for transportation.

4. That the plaintiff hoped to develop and mine the lignite deposits personally inasmuch as the lignite was located close to the surface, was easy to strip-mine and the union problems present in Kentucky did not exist with respect to these properties located in Alabama.

5. That the plaintiff decided in 1978 or 1979 to assign his interests in the properties to the partnership.

6. That on and before January 1, 1976, and at the time the advanced royalty payments were made, the plaintiff intended to personally utilize the property in some fashion and did not intend to sublease same during that period of time.

## G. THE OLD BEN LEASE

1. That the plaintiff acquired an interest in the Old Ben properties located in Hopkins and McLean Counties in Kentucky by virtue of an "Option Agreement" executed on June 18, 1976, for which the plaintiff paid $10,000.00 as required by such agreement.

2. That the plaintiff was required by said agreement to pay an additional $90,-000.00 to exercise the option per the terms of the agreement.

3. That the plaintiff paid the $10,000.00 in order to buy time, and to insure his exclusive ability to exercise the option if he desired.

4. That at the time of the execution of the Option Agreement on June 18, 1976, the plaintiff had not performed a title examination or performed other tests which would have been necessary for him to determine: (1) whether or not he could mine the property personally or with another entity, or (2) whether his interests in the property could be assigned, or (3) whether the plaintiff wanted to exercise the option by payment of the additional $90,000.00.

5. That the plaintiff did not decide to exercise the option until on or about to February 26, 1977.

6. That on and prior to January 1, 1976, and at the time the advanced royalty payments were made, the plaintiff had no settled intention to sublease his interest in said property, and did not acquire such an interest which could be subleased until the option was exercised on February 26, 1977.

## CONCLUSIONS OF LAW

■ 1. The assessment made by the Commissioner of Internal Revenue is presumed to be correct. *Sinder v. United States,* 655 F.2d 729, 731 (6th Cir.1981).

■ 2. The taxpayer bears the burden of proving that the assessment was wrong. *Ibid.*

3. The burden on the taxpayer is a burden of persuasion by the preponderance of

the evidence that the assessment is not correct. *Ibid.*

4. The Court need not differentiate between the plaintiff's "intention" as used in *Brown v. U.S.* and his "predominant intention" as used in *Collins v. Commissioner*, 53, T.C.M. ———— T.C.M. 1987–259 (1987). Under either term the evidence with respect to each lease is clear. The Court's factual findings as to the plaintiff's intention also represent the Court's findings as to the plaintiff's predominant intention with respect to each lease. There was no factual distinction shown with respect to any of the leases.

■ 5. The advanced royalty payments made by the plaintiff for the Wickliffe, Casebier, Cross and Spinks leases during 1976 must be offset by the royalty payments received thereafter with respect to each property, inasmuch as the royalty payments received constituted component parts of overall plans to sublease those properties.

■ 6. The advanced royalty payments made by the plaintiff for the Old Ben and Alabama Lignite leases were properly claimed as deductions by the plaintiff on his 1976 federal income tax return inasmuch as he had no settled intention which would constitute plans to sublease those properties.

■ 7. The payment by the plaintiff of $10,000.00 for the Old Ben Option Agreement on June 18, 1976, was payment for the purchase of an option which may not be treated as an ordinary business expense under 26 U.S.C. § 162 during the calendar year 1976.

Pursuant to the mandate of the Sixth Circuit in *Brown v. United States*, 782 F.2d 559 (6th Cir.1986), the Court has considered the evidence relating to the element of the intent of Brown and has applied the "end result" of *Davis v. Commissioner*, 746 F.2d 357 (6th Cir.1984), in making the above findings of fact and conclusions of law.

Counsel for the United States shall submit to the Court, within fourteen (14) days from the date of entry of this order, a proposed form of judgment in conformity with the findings of fact and conclusions of law herein. Counsel for the plaintiff shall have five (5) days after service thereof in which to bring to the Court's attention any objections as to form. Neither the plaintiff nor the defendant shall be deemed to have accepted the substantive findings or conclusions set forth herein by submission of or response to a proposed form of judgment.